566 So.2d 472 (1990)
In the Interest of M.A.C.
v.
HARRISON COUNTY FAMILY COURT.
No. 07-CA-59105.
Supreme Court of Mississippi.
August 22, 1990.
*473 Wade M. Baine, Gulfport, for appellant.
Mike C. Moore, Atty. Gen., Wayne M. Snuggs, Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, P.J., and PRATHER and ROBERTSON, JJ.
PRATHER, Justice, for the Court:

I. INTRODUCTION

A.
This appeal addresses the allegedly unlawful refusal by law enforcement officials of a parent's request to be present during the interrogation of her seventeen-year-old son, M.A.C.[1]

B.
On June 6, 1987, between the hours of 1:00 a.m. and 7:15 a.m., an unknown person or persons, broke into a 1981 Maxima automobile parked on a residential Gulfport street and stole an Alpha Sonic equalizer and an Escort radar detector.
On July 31, 1987, Detective N.P. Pope was in the process of investigating several thefts of radar detectors from vehicles. In his words, M.A.C.'s name came up several times during his discussions with various suspects. During one particular discussion, a juvenile confessed that he and M.A.C. burglarized the 1981 Maxima vehicle.
Pope then called the Family Court Judge and received oral permission from the judge to take M.A.C. into custody.[2] Pope then called Officer Jeff Michelle and instructed him to go to the youth's residence and take him into custody. When Michelle arrived at the residence, M.A.C.'s mother protested Michelle's attempt to arrest her son, contending that he needed an arrest warrant in order to take him in.
The mother later testified that when she attempted to call her attorney to check out the situation, Michelle placed one hand on his nightstick and a finger in her face and warned that if she made the call, he would arrest her for interfering with an officer making an arrest. Michelle, on the other hand, testified that he made such a statement only after he had checked with Detective Pope concerning his lack of an arrest warrant and had received the go-ahead. According to Michelle, he only threatened to arrest the mother once she indicated that she would not turn her son over to him.
M.A.C. was handcuffed and taken to the police station by Michelle, with the mother following closely behind in her automobile. At the police station, Michelle took M.A.C. inside an interrogation room where the mother was told she could not go. Michelle testified that he told the mother to wait in a waiting room in a building "two parking *474 lots over." Pope subsequently read M.A.C. his Miranda warnings  after which M.A.C. decided to waive his rights. Pope interrogated M.A.C. for an unspecified period of time. Eventually, M.A.C.'s mother decided to "disobey" Michelle's instructions to her, and she made her way to the room where her son was being interrogated. By that time, M.A.C. had confessed to participating in the burglary.
In response to a question about why the mother was not permitted to be with her son during the interrogation, Pope admitted he didn't know she was in the building. He added that he had heard she was "en route," but that "it's [his] personal policy not to have the [parents] there" during the interrogation unless their presence was requested by the juvenile or by the parents themselves. Pope claims that a request was never made by anyone to him.
M.A.C. was charged in the Family Court of Harrison County on automobile burglary charges. In his defense, M.A.C. presented testimony from his parents, who testified that on the evening in question, M.A.C. had had a date and got home around 11:30. He then talked on the phone with Emily Welch, the girl with whom he had the date, until almost 3:00 a.m. The mother also testified that she normally got up around 5:30 to 6:00 a.m., and that when she awoke that morning, M.A.C. was in bed. Emily Welch confirmed the time frame for the date and the phone conversation.
At the conclusion of the hearing, M.A.C. was found guilty, adjudged a delinquent child, and placed on supervised probation for six months. From this adjudication, M.A.C. appealed and presented several issues. Of these issues, this Court deems it necessary to address only one: Whether the interrogation of M.A.C. without his mother being present was violative of statutory law?

II. ANALYSIS

A.
A threshold consideration is the question of mootness since the sentence of six-months probation has now been completed. In Pascagoula Municipal Separate School District v. Doe, 508 So.2d 1081, 1084 (Miss. 1987), this Court "recognized the importance of addressing issues which avoid resolution because the challenged action [was] too short in duration to be fully litigated." Strong v. Bostick, 420 So.2d 1356, 1359 (Miss. 1982). Notwithstanding the fact that M.A.C.'s sentence of probation has been served, this Court feels it necessary to review the issue presented on appeal in order to avoid future repetition by law enforcement officers.

B.
Section 43-21-303(3) of the Mississippi Code Annotated provides that:
(3) Unless the child is immediately released, the person taking the child into custody shall immediately notify the judge or his designee. A person taking a child into custody shall also make continuing reasonable efforts to notify the child's parent, guardian or custodian and invite the parent, guardian or custodian to be present during any questioning.

(emphasis added).
This provision was clearly violated by the Gulfport Police Department. The statute instructs that the parent shall be invited to be present "during any questioning." In the case sub judice, the mother requested numerous times to see her son, but she was ordered to wait in a building "two parking lots over" while M.A.C. was interrogated. When she finally made her way to the interrogation room, her son had waived his Miranda rights and succumbed to being interrogated. See Miranda v. Arizona, 384 U.S. 436, 478-79, 86 S.Ct. 1602, 1629-30, 16 L.Ed.2d 694, 726 (1966). Surprisingly, Detective Pope admitted that excluding parents during an interrogation was his standard policy. Without a doubt, this was violative of § 43-21-303(3)  which cannot continue nor be condoned. This Court thus holds that the violation necessitates reversal of the conviction.

*475 III. CONCLUSION
The adjudication is reversed due to the blatant violation of the statutory right of a parent to be present during interrogation of his or her child. A reversal such as this would normally warrant the granting of a new trial; however, since the sentence has been fully served, a new trial is unwarranted. Thus, this Court deems it unnecessary to decide whether the evidence obtained as a consequence of the unlawful interrogation would be admissible.
REVERSED AND RENDERED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and ROBERTSON, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.
NOTES
[1] Due to his age, initials are used in lieu of a full name.
[2] Notably, the Family Court Judge did not specifically remember this authorization, although he did remember talking to Pope several times during the course of the day.