748 A.2d 1108

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. PHILLIP PRESHA, DEFENDANT–APPELLANT.

Argued October 26, 1999—Decided March 23, 2000.

*Robert L. Sloan*, Assistant Deputy Public Defender, argued the cause for appellant (*Ivelisse Torres*, Public Defender, attorney).

*Debra A. Owens*, Deputy Attorney General, argued the cause for respondent (*John J. Farmer, Jr.*, Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

VERNIERO, J.

In this appeal, we consider the voluntariness of a confession by defendant, a juvenile, in a custodial setting. Defendant confessed to committing certain offenses after waiving his constitutional rights in the presence of his mother and deciding that he did not

want her present in the interrogation room. At the outset of the interrogation, the parent agreed she should not be present. At the time, the juvenile was almost seventeen years of age and was familiar with the criminal justice system because of fifteen prior arrests. Defendant's mother wanted to rejoin her son well into the questioning, but the police did not accede to that request.

The trial court and Appellate Division concluded that the juvenile's confession was voluntary based on the totality of circumstances, including the juvenile's age at the time of his statement, his clear desire to speak outside the presence of his mother, his mother's initial agreement to be absent, and his fair treatment by police. We granted defendant's petition for certification, 160 *N.J.* 90, 733 *A.*2d 495 (1999), and now affirm.

We hold that courts should consider the totality of circumstances when reviewing the admissibility of confessions by juveniles in custody. Moreover, courts should consider the absence of a parent or legal guardian from the interrogation area as a highly significant fact when determining whether the State has demonstrated that a juvenile's waiver of rights was knowing, intelligent, and voluntary. In the specific circumstances of this case, according enhanced weight to the absence of the parent from the interrogation, we conclude that the State has carried its burden.

We note that a special circumstance exists when a juvenile is under the age of fourteen. We will apply a different standard in that context, namely, the adult's absence will render the young offender's statement inadmissible as a matter of law, unless the parent or legal guardian is truly unavailable. Regardless of the juvenile's age, law enforcement officers must use their best efforts to locate the adult before beginning the interrogation and should account for those efforts to the trial court's satisfaction.

I.

In the early morning hours of February 27, 1995, at approximately 12:30 a.m., the Willingboro home of seventy-year-old John Oldham and his seventy-three-year-old wife, Sarah Oldham, was

burglarized. There were two perpetrators, armed with knives, who covered their faces with a hood and ski-type mask. After beating John Oldham and cutting both his throat and Sarah Oldham's, the assailants ran from the house carrying Mrs. Oldham's purse. Although seriously injured, the Oldhams survived the attack.

Within an hour, police officers arrived at the scene. The officers observed two sets of footprints in the light snow outside of the Oldham residence. The footprints led the officers to defendant's house, a short distance away. At approximately 1:30 a.m., one of the officers knocked on the door of defendant's home. His mother, Michelle Robinson, answered. The officer explained to Mrs. Robinson that the footprints led them to her front porch. Mrs. Robinson informed the officer that defendant was the last person who had come into the house that evening about fifteen minutes after midnight. She agreed to take both defendant and her other son, who were then present in the house, to the Willingboro Police Station. At the time, defendant was within two weeks of his seventeenth birthday. He had also been arrested on fifteen prior occasions on unrelated charges.

Shortly before 4:00 a.m., with Mrs. Robinson's consent, the officers transported defendant and his brother from the police station to the Burlington County Prosecutor's Office. According to the police, Detective Jay Brown informed defendant of his constitutional rights as required by *Miranda v. Arizona*, 384 *U.S.* 436, 86 *S.Ct.* 1602, 16 *L.Ed.*2d 694 (1966). Defendant's mother was present in the same room. At about 4:20 a.m., defendant, who said he had slept until about 1:00 p.m. the day before, indicated that he understood his rights and signed the *Miranda* card. Defendant's mother signed the same *Miranda* card as a witness. Detective Brown thereafter informed Mrs. Robinson that she had the right to be present while he interviewed her son.

After discussing the matter with defendant, Mrs. Robinson and defendant decided that she should leave the room during questioning. After Mrs. Robinson departed, Detective Brown, joined by a

second detective, proceeded to interview defendant for approximately forty to fifty minutes. Initially, defendant denied any involvement in the crimes.

After a break, during which defendant was not handcuffed and remained unguarded in the interview room, the detectives resumed questioning for another forty to fifty minutes. During this second session, they confronted defendant with the fact that footprints led them from the house of the victims to his house. In response, defendant stated that he had acted only as a lookout for his twenty-two-year-old cousin and another person, still denying a central role in the robbery and assaults.

The detectives took another ten- to twenty-minute break. After that second break, the detectives informed defendant that they had found two sets of footprints, not three, prompting him to admit that he and his cousin had committed the offenses. The detectives then took another break, during which they escorted defendant to the men's room and gave him a drink of water.

The questioning resumed and defendant provided more details about the night in question, after which the detectives took yet another break. After that fourth break, defendant provided a taped confession beginning at approximately 7:39 a.m. and concluding at 8:11 a.m. Sometime before defendant confessed, his mother asked to see him. She also said to one of the officers, "I think they [her sons] should have a lawyer." The officer replied that he did not think that was necessary, stating "[w]e're just trying to get to the truth." Mrs. Robinson did not see defendant until after he completed his taped statement.

The trial court conducted a four-day *Miranda* hearing, during which defendant and Mrs. Robinson disagreed with the police version of the facts, and disagreed with each other. Defendant testified that he did not see his mother at the Burlington County Prosecutor's Office until after he taped his statement. In contrast, Mrs. Robinson testified that she was brought into the room with her son, witnessed the signing of the *Miranda* card, and then left. The State and defendant disputed other facts as well.

After weighing the credibility of all witnesses, the trial court found as a fact that Detective Brown advised defendant of his Miranda rights with his mother present in the same room; that they both understood and signed the Miranda card; that they both were aware of Mrs. Robinson's right to be present during the questioning of defendant; that defendant requested that his mother not be present during the interrogation; and that Mrs. Robinson initially agreed to be absent. The court also settled a factual dispute regarding whether Mrs. Robinson asked to reenter the interrogation area. The court found that the parent did, in fact, make that request, notwithstanding the contrary testimony of the officer. For purposes of this appeal, we accept the trial court's findings. *State v. Locurto,* 157 *N.J.* 463, 470–71, 724 *A.*2d 234 (1999).

The trial court also concluded that the State had met its burden of proving, beyond a reasonable doubt, that the juvenile's statement was knowing, intelligent, and voluntary. It based that conclusion on the totality of circumstances surrounding the arrest and interrogation. Specifically, the court was persuaded by the juvenile's advanced age, together with his prior experience with law enforcement, and by the fact that defendant himself chose to have his mother out of the room during questioning. The trial court found that under those circumstances the subsequent wishes of defendant's mother "were not controlling ... given the age [and] the experience of this particular juvenile." The "bottom line," the trial court noted, was that "[defendant's] will was not overborne by law enforcement."

Reserving his right to appeal, defendant pled guilty, pursuant to a plea agreement, to second-degree conspiracy in violation of *N.J.S.A.* 2C:5–2; first-degree robbery in violation of *N.J.S.A.* 2C:15–1a(1); and second-degree burglary in violation of *N.J.S.A.* 2C:18–2a(1). Consistent with the plea arrangement, the trial court sentenced defendant to a twenty-year term of imprisonment with an eight-year parole disqualifier for the armed robbery; a concurrent term of ten years with a five-year parole disqualifier

for the conspiracy; and a concurrent term of ten years with a five-year parole disqualifier for the burglary.

Before the Appellate Division, defendant argued that his rights were violated when his mother was denied access to him during the interrogation, and that the trial court should have merged the conspiracy conviction with the burglary and robbery counts. In an unreported decision, the Appellate Division agreed with the trial court that, considering all factors, defendant's confession was voluntary and thus admissible. The panel specifically noted the following factors as support for its conclusion:

the fact that defendant was just two weeks shy of his seventeenth birthday; defendant had extensive prior encounters with law enforcement; had been giving [sic] his *Miranda* rights on several of those encounters; defendant had waived those rights on February 27, 1995, in the presence of his mother; defendant had agreed with his mother that she would not be present during his interrogation; and defendant had not attempted to either invoke his right to counsel or expressed a desire to speak to his mother at any time during the interrogation. Further, the interrogation, which occurred in spurts of forty to fifty minute periods, was neither grueling nor strenuous for defendant. Moreover, defendant never challenged the truth of his confession nor claimed that his investigators used tactics that overbore his will.

The Appellate Division agreed with defendant that his conviction for conspiracy should have been merged with his convictions for either robbery or burglary. Consistent with defendant's petition for certification, the voluntariness of his confession is the only issue before us.

## II.

### A.

The privilege against self-incrimination, as set forth in the Fifth Amendment to the United States Constitution, is one of the most important protections of the criminal law. *U.S. Const.* amend. V; *State v. Hartley*, 103 *N.J.* 252, 262, 511 *A.*2d 80 (1986). We do not have a similar provision in our State Constitution; however, "the privilege itself 'is firmly established as part of the common law of New Jersey and has been incorporated into our

Rules of Evidence.'" *Hartley*, 103 *N.J.* at 260, 511 *A.*2d 80 (quoting *In re Martin*, 90 *N.J.* 295, 331, 447 *A.*2d 1290 (1982)).

Although a suspect is always free to waive the privilege and confess to committing crimes, that waiver must never be the product of police coercion. *Ibid.* Accordingly, for a confession to be admissible as evidence, prosecutors must prove beyond a reasonable doubt that the suspect's waiver was knowing, intelligent, and voluntary in light of all the circumstances. *State v. Burris*, 145 *N.J.* 509, 534, 679 *A.*2d 121 (1996); *State v. Kelly*, 61 *N.J.* 283, 294, 294 *A.*2d 41 (1972).

At the root of the inquiry is whether a suspect's will has been overborne by police conduct. In determining whether a suspect's confession is the product of free will, courts traditionally assess the totality of circumstances surrounding the arrest and interrogation, including such factors as "the suspect's age, education and intelligence, advice as to constitutional rights, length of detention, whether the questioning was repeated and prolonged in nature and whether physical punishment or mental exhaustion was involved." *State v. Miller*, 76 *N.J.* 392, 402, 388 *A.*2d 218 (1978). Additionally, "[a] suspect's previous encounters with the law has been mentioned as [a] relevant factor." *Ibid.* We reaffirm those factors as germane to an evaluation of the admissibility of either adult or juvenile confessions.

## B.

The requirement of voluntariness applies equally to adult and juvenile confessions. *See N.J.S.A.* 2A:4A-40 ("All rights guaranteed to criminal defendants by the Constitution of the United States and the Constitution of this State . . . shall be applicable to cases arising under the [New Jersey Code of Juvenile Justice]"); *see also In re Gault*, 387 *U.S.* 1, 13, 87 *S.Ct.* 1428, 1436, 18 *L.Ed.*2d 527, 538 (1967) ("[N]either the Fourteenth Amendment nor the Bill of Rights is for adults alone.").

The role of a parent in the context of a juvenile interrogation takes on special significance. *In re Carlo*, 48 *N.J.* 224, 225 *A.*2d 110 (1966). In that circumstance, the parent serves as advisor to the juvenile, someone who can offer a measure of support in the unfamiliar setting of the police station. *Gallegos v. Colorado*, 370 *U.S.* 49, 54, 82 *S.Ct.* 1209, 1213, 8 *L.Ed.*2d 325, 329 (1962). Thus, we have emphasized that "[w]henever possible and especially in the case of young children no child should be interviewed except in the presence of his parents or guardian." *In re S.H.*, 61 *N.J.* 108, 114–15, 293 *A.*2d 181 (1972); *see also Garrett v. State*, 265 *Ind.* 63, 351 *N.E.*2d 30, 33 (1976) (explaining that parent and child must have a realistic opportunity to consult on waiving the privilege against self-incrimination).

Earlier in our history, the State's mission in respect of juvenile offenders was predominately one of rehabilitation. Consistent with that purpose, the presence of a parent in the interrogation area served not only to protect the juvenile's interests but, as importantly, to ensure the truthfulness of any statements to the police. *In re Carlo, supra*, 48 *N.J.* at 244, 225 *A.*2d 110 (Weintraub, C.J., concurring) ("The object of the juvenile process is to make men out of errant boys. In that process we must build upon the truth.").

Today, the juvenile process is different. A recent government report notes, "[j]uvenile delinquency, or 'youth crime' is recognized as a major social problem in our society. In New Jersey, as elsewhere, juveniles are responsible for a large share of the total amount of crime." *Juvenile Justice Master Plan* by New Jersey Juvenile Justice Commission, at 6 (April 1999). As a result, punishment has now joined rehabilitation as a component of the State's core mission with respect to juvenile offenders. *See, e.g., State v. R.G.D.*, 108 *N.J.* 1, 8, 527 *A.*2d 834 (1987) (noting that "[p]ublic concern about unrehabilitated juvenile offenders [has] stimulated a 'just deserts' approach to juvenile crime").

With the State's increased focus on the apprehension and prosecution of youthful offenders, the parent's role in an interro-

gation setting takes on new significance. When younger offenders are in custody, the parent serves as a buffer between the juvenile, who is entitled to certain protections, and the police, whose investigative function brings the officers necessarily in conflict with the juvenile's legal interests. Parents are in a position to assist juveniles in understanding their rights, acting intelligently in waiving those rights, and otherwise remaining calm in the face of an interrogation. *Gallegos, supra,* 370 *U.S.* at 54, 82 *S.Ct.* at 1212–13, 8 *L.Ed.*2d at 329.

In view of the changing realities of the juvenile process and the important rights at stake, we reaffirm our belief that a parent or legal guardian should be present in the interrogation room, whenever possible. *In re S.H., supra,* 61 *N.J.* 108, 293 *A.*2d 181. In respect of confessions by juveniles of any age, courts should consider the adult's absence as a highly significant factor among all other facts and circumstances. By "highly significant factor" we mean that courts should give that factor added weight when balancing it against all other factors. By elevating the significance of the adult's role in the overall balance, we are satisfied that the rights of juveniles will be protected in a manner consistent with constitutional guarantees and modern realities.

As we have suggested in prior cases, younger offenders present a special circumstance in the context of a police interrogation. *In re S.H., supra,* 61 *N.J.* at 114–15, 293 *A.*2d 181. In respect of a juvenile under the age of fourteen, we believe an evaluation of the totality of circumstances would be insufficient to assure the knowing, intelligent, and voluntary waiver of rights. Accordingly, when a parent or legal guardian is absent from an interrogation involving a juvenile that young, any confession resulting from the interrogation should be deemed inadmissible as a matter of law, unless the adult was unwilling to be present or truly unavailable. That approach is consistent with other jurisdictions that have recently adopted the same or similar rule.

We cannot ignore the immaturity and inexperience of a child under 14 years of age and the obvious disadvantage such a child has in confronting a custodial police

interrogation. In such a case, we conclude that the totality of the circumstances is not sufficient to ensure that the child makes an intelligent and knowing waiver of his rights. ·

[*In re B.M.B.*, 264 *Kan.* 417, 955 *P.*2d 1302, 1312 (1998).]

*See also Commonwealth v. A Juvenile (No.1)*, 389 *Mass.* 128, 449 *N.E.*2d 654, 657 (1983) ("For the purpose of obtaining the waiver, in the case of juveniles who are under the age of fourteen, we conclude that no waiver can be effective without this added protection."). "The benefit of this 'bright-line' rule is that it will protect the rights of a defendant and, at the same time, be easy for the police to implement." *State v. Hartley, supra,* 103 *N.J.* at 287, 511 *A.*2d 80.

In other contexts, our State policy reflects the appropriateness of age fourteen as a dividing line. *See, e.g., In re Commitment of N.N.,* 146 *N.J.* 112, 137, 679 *A.*2d 1174 (1996) (observing that "a differentiation in the juvenile commitment scheme at age fourteen is consistent with other principles of New Jersey law"). New Jersey statutes and court rules contain numerous provisions creating age-differential standards set at fourteen. *See, e.g., N.J.S.A.* 2A:4A–26 (permitting family part to waive jurisdiction, for certain charges, if juvenile was fourteen at time of delinquent act); *N.J.S.A.* 2A:4A–35 (permitting juvenile age fourteen or older, charged with a delinquency, to be released to juvenile's own recognizance); *N.J.S.A.* 2A:4A–61(b) (prohibiting taking of pictures of juvenile under age fourteen without consent of court or juvenile and his or her parent or guardian); *R.* 5:22–1 ("Any competent juvenile 14 years of age or older charged with delinquency may elect to have the action transferred to the appropriate court and prosecuting authority having jurisdiction.").

 Regardless of the juvenile's age, police officers must use their best efforts to locate a parent or legal guardian before beginning the interrogation. *In re J.F.,* 286 *N.J.Super.* 89, 98, 668 *A.*2d 426 (App.Div.1995). Moreover, to sustain the admissibility of incriminating statements made outside of the adult's presence, prosecutors are required to show to the trial court's satisfaction, upon sufficient proofs, that they were unable to locate the adult.

Such an additional showing has been implied by other court decisions; we have expressly noted it here for the sake of completeness. *Ibid.* (citing *In re S.H., supra,* 61 *N.J.* at 114–15, 293 *A.*2d 181; *In re Carlo, supra,* 48 *N.J.* at 240–41, 225 *A.*2d 110; *In re J.P.B.,* 143 *N.J.Super.* 96, 108, 362 *A.*2d 1183 (App.Div.1976); *In re A.B.M.,* 125 *N.J.Super.* 162, 168, 309 *A.*2d 619 (App.Div.), *aff'd o.b.,* 63 *N.J.* 531, 309 *A.*2d 617 (1973); *State v. R.W.,* 115 *N.J.Super.* 286, 301, 279 *A.*2d 709 (App.Div.1971), *aff'd o.b.,* 61 *N.J.* 118, 293 *A.*2d 186 (1972)).

■ As important, when an adult is unavailable or declines to accompany the juvenile, the police must conduct the interrogation with "the utmost fairness and in accordance with the highest standards of due process and fundamental fairness." *In re S.H., supra,* 61 *N.J.* at 115, 293 *A.*2d 181; *State v. R.W., supra,* 115 *N.J.Super.* at 296, 279 *A.*2d 709. That requirement, too, has been a common thread in our jurisprudence and is reaffirmed today.

### III.

■ Defendant was nearly seventeen at the time of the custodial interrogation. Thus, the rule rendering some confessions of juveniles under the age of fourteen inadmissible as a matter of law does not apply to this appeal. Instead, we review defendant's confession in light of the totality of circumstances, viewing as highly significant the fact that defendant's mother was absent from the interrogation area at the time of the juvenile's statement. Under that standard, we are satisfied that the State has carried its burden of demonstrating defendant's voluntary waiver of his rights. We reach that conclusion relying substantially on the factors emphasized by the Appellate Division and trial court.

We emphasize that, because of his advanced age and the fact that he had been arrested on fifteen prior occasions, defendant was familiar with the criminal process at the time of his statement. Further, the police afforded defendant numerous breaks in the interrogation, time enough for him to reevaluate his decision to proceed without a parent. He elected to continue, notwithstand-

ing his mother's absence. Moreover, we view as especially important the fact that Mrs. Robinson was present at the outset of the encounter with the police, before any questioning of her son. She had the opportunity to offer support to defendant, to witness the signing of the *Miranda* card, and she consented to her initial absence from the interrogation area.

All of those facts—defendant's age and familiarity with the criminal process, his clear desire to be interviewed without a parent present, the presence of a parent at the outset of the questioning, and his fair treatment by police—compel us to conclude that defendant's will was not overborne by investigators, the critical factor in this inquiry. Although we have assigned greater weight to Mrs. Robinson's absence than did the trial court and Appellate Division, our conclusion under all the circumstances is consistent with theirs.

We have referred to Mrs. Robinson as being absent from the interrogation, as opposed to being deliberately excluded by the police, because the trial court found that, in concert with defendant, she voluntarily left the interrogation room at the start of the interview. It was only sometime later, the court concluded, that the one officer did not accede to Mrs. Robinson's request to reenter.

It is difficult for us to envision prosecutors successfully carrying their burdens in future cases in which there has been some deliberate exclusion of a juvenile's parent or legal guardian from the interrogation. However, because the proof in the present case is so compelling that defendant's will was not overborne and the police did not have the benefit of our direction at the time of the interrogation, we see no reason to disturb the judgments below. We are satisfied that on this record the police should be judged by the standards prevailing at the time the officers interrogated defendant, not by the stricter standards announced in this opinion. *See State v. Abronski,* 145 *N.J.* 265, 268, 678 *A.*2d 659 (1996) (applying new rule of criminal procedure prospectively in case in which "police justifiably relied on and followed" prior rule).

Defendant argues for a different result relying, in part, on *State v. Reed*, 133 *N.J.* 237, 627 *A.*2d 630 (1993). In *Reed*, the defendant's lawyer attempted to consult with his client while at the prosecutor's office, but was not permitted to communicate with or assist him either at the outset of or during questioning. Nor did police inform the defendant that his attorney was waiting to see him. *Id.* at 242–43, 627 *A.*2d 630. We held that the suspect's waiver of his privilege against self-incrimination was invalid. *Id.* at 269, 627 *A.*2d 630.

This case is different from that presented in *Reed*. In *Reed*, the police denied the defendant all access to his attorney, whereas here Mrs. Robinson was present in the interrogation area before the start of questioning and agreed with her son that she should leave the area. In *Reed*, the police did not inform the defendant that his attorney was waiting to assist him, whereas here defendant knew his mother was on the premises and could have interrupted the interrogation at any time to speak with her.

Moreover, we based our decision in *Reed* on the attorney-client relationship, unique in the criminal justice system. We noted that "our holding is supported in large measure by the special and essential role lawyers play in realizing the purpose of the right against self-incrimination." *Id.* at 262, 627 *A.*2d 630. We also approvingly quoted Justice Blackmun's observation that

> [t]he rule in *Miranda*, ... was based on this Court's perception that the lawyer occupies a critical position in our legal system because of his unique ability to protect the Fifth Amendment rights of a client undergoing custodial interrogation.
>
> . . . . . . . . . .
>
> Whether it is a *minor or an adult* who stands accused, *the lawyer is the one person* to whom society as a whole looks as the protector of the legal rights of that person in his dealings with the police and the courts.
>
> [*Ibid.* (emphasis added) (quoting *Fare v. Michael C.*, 442 *U.S.* 707, 719, 99 *S.Ct.* 2560, 2568–69, 61 *L.Ed.*2d 197, 208–09 (1979)).]

A parent obviously enjoys a special relationship with the juvenile; however, the attorney, not the parent, is trained in the law and serves in a unique role as the juvenile's advocate. Because of the

above distinctions, we decline to apply our holding in *Reed* to this appeal.

## IV.

In his separate opinion, our colleague confirms that courts in a majority of states apply a totality of circumstances test when considering the voluntariness of a confession by a juvenile. The concurring opinion further observes that "all courts that have applied that standard to a case in which a parent was deliberately excluded have suppressed the confession." *Post* at 324, 748 *A.*2d at 1119. That observation reinforces our belief that the totality of circumstances standard as enunciated here will work as it should: namely, when there has been a deliberate exclusion of a parent or legal guardian from the interrogation room and the police thereafter obtain the juvenile's confession, that confession almost invariably will be suppressed.

The concurring opinion also suggests that our holding is out of step with majority case law from around the country. Not so. Upon close scrutiny, the cases cited in the concurring opinion either have stark factual differences making them inapposite to this case or are in harmony with our disposition here. For example, in *People v. Townsend*, 33 *N.Y.*2d 37, 347 *N.Y.S.*2d 187, 300 *N.E.*2d 722, 724 (1973), the court found that the police used "deception and trickery" to obtain the minor's confession. Those facts do not exist here. Similarly, the defendant in *People v. Bevilacqua*, 45 *N.Y.*2d 508, 410 *N.Y.S.*2d 549, 382 *N.E.*2d 1326 (1978), was isolated from his mother, whereas the defendant in this case enjoyed unencumbered access to his mother before the start of questioning and had the benefit of her presence at the time he waived his rights. Likewise, the defendant in *People v. Burton*, 6 *Cal.*3d 375, 99 *Cal.Rptr.* 1, 491 *P.*2d 793 (1971), expressly requested the presence of his mother, whereas here defendant pointedly decided that he did not want his mother present in the interrogation room.

In the particularly egregious case of *M.A.C. v. Harrison County Family Court*, 566 *So.*2d 472, 473 (Miss.1990), the juvenile's mother attempted to call her attorney while her son was being arrested; a police officer, with one hand on his night stick and the other pointing in the face of the parent, said that he would arrest the parent if she interfered with the juvenile's arrest. The juvenile was later isolated from the parent at the outset of the interrogation pursuant to the officer's "standard" policy. *Id.* at 473–74. Those facts are far afield from the facts at bar.

Suffice to say, we have no doubt that if the fact patterns in any of the above cases appeared in a New Jersey appeal, the minor's confession would not withstand our totality of circumstances test. But we reiterate that those facts are not before us in this case.

Decisions announced in another group of cases are in complete harmony with our decision. For example, the concurring opinion cites to *People v. Brown*, 182 *Ill.App.*3d 1046, 131 *Ill.Dec.* 534, 538 *N.E.*2d 909 (1989); however, there the court made clear that "a juvenile does not have a *per se* right in Illinois to consult with a parent before questioning or to have the parent present during questioning" and that "[t]he presence or absence of the parent is a factor in evaluating the voluntariness of a statement or confession under the totality of the circumstances test." *Id.* at 913. We do not perceive our holding as being less protective of juveniles than the one announced in *Brown;* to the contrary, we go a step further by establishing a bright-line rule for confessions by juveniles under the age of fourteen.

In yet another case, *State v. Johnson*, 221 *Mont.* 503, 719 *P.*2d 1248 (1986), although the court addressed numerous constitutional issues, the specific defendant there appears to have been a married adult; thus, its holding does not implicate ours. In *In re L.B.*, 33 *Colo.App.* 1, 513 *P.*2d 1069 (1973), the juvenile whose statement the court suppressed was age thirteen; again, that result is consistent with our opinion.

We reiterate that law enforcement officers must use their best efforts to locate a parent or legal guardian before the start of

questioning and must account for those efforts to the trial court's satisfaction. That requirement addresses the concern expressed in the eight statutes identified in the concurring opinion, *post* at 327–28, 748 *A*.2d at 1121, that have codified a similar rule.

The protections set forth in this opinion are similar to the ones found in other jurisdictions and in some instances, exceed them. Although we differ from our colleague in the manner of expression and in the interpretation of cases in this area, we perceive little or no disagreement on this critical point: statements of juveniles in custody in New Jersey must be voluntary and properly obtained, today and in the future.

## V.

In sum, a parent or legal guardian should attend a juvenile interrogation whenever possible to help assure that any waiver of rights by the juvenile is the product of free will. Police officers must use their best efforts to locate a juvenile's parent or legal guardian before beginning an interrogation and should be required to account for those efforts to the trial court's satisfaction. We consider the absence of the adult to be a highly significant factor in the overall balance of factors used to determine the admissibility of the juvenile's statement. It would be difficult to envision prosecutors successfully carrying their burdens in cases in which the police deliberately exclude a parent or legal guardian from the interrogation. When the juvenile is under the age of fourteen, the adult's absence will render the young offender's statement inadmissible as a matter of law—unless the adult is truly unavailable, in which case, the voluntariness of the waiver should be determined by considering the totality of circumstances consistent with this opinion.

## VI.

The judgment of the Appellate Division is affirmed.

STEIN, J., concurring.

I join in the Court's determination to sustain the admissibility of the defendant's confession. This record demonstrates that the juvenile defendant had the benefit of a parent's presence during the critical period before questioning began and while defendant was read his *Miranda* rights. Also significant is the fact that defendant's mother left the room voluntarily. However, I believe that the Court errs when it declines to state unequivocally the consequences in future cases of the deliberate exclusion of parents who have not been present at all during their child's interrogation, and does not acknowledge the obvious connection between the exclusion of parents and the availability of a juvenile's right to counsel. The adoption of a bright-line rule rendering inadmissible those statements made by a juvenile whose parent has been deliberately excluded by the police from the interrogation room would be consistent with statutes and judicial decisions throughout the country. There should be no uncertainty within our State's law enforcement community that the same rule will apply in New Jersey's courts.

I

The critical events of this case occurred in the early hours of the morning of February 27, 1995. Defendant and his mother, Michele Robinson, were at Willingboro police station at about 2:30 a.m. At about 4:00 a.m. defendant was driven to the prosecutor's office by the police. There, he was placed in a waiting room until his mother arrived. After defendant was informed of and indicated that he understood his constitutional rights, he and his mother signed the *Miranda* card at about 4:20 a.m. Mrs. Robinson then voluntarily left the interrogation room.

Some time between the time of her departure and 7:39 a.m., when her son made a taped confession, Mrs. Robinson told an officer that she wanted to see her son and that she thought he needed a lawyer. At trial, one of the police officers denied that Mrs. Robinson had made those statements. Rejecting that offi-

cer's version of the relevant events, the trial court specifically found as a fact "that Michele Robinson was direct, truthful and convincing." The court also found that the police officer, "as to his denial of [Mrs. Robinson's having made the statements], was evasive, unconvincing and disingenuous." Nevertheless, the trial court determined that because of defendant's age, his prior experiences with the police and his decision not to have his mother present during the earlier questioning, his confession was knowing, voluntary and intelligent and therefore admissible into evidence.

## II

Courts and legislatures nationwide generally have adopted one of two approaches in deciding whether to admit a minor's confession obtained subsequent to the deliberate exclusion of a parent. Under the first approach, which most states follow, courts consider the totality of the circumstances. Notably, all courts that have applied that standard to a case in which a parent was deliberately excluded have suppressed the confession.

In *People v. Townsend,* 33 *N.Y.*2d 37, 347 *N.Y.S.*2d 187, 300 *N.E.*2d 722 (1973), the mother of a seventeen-year-old defendant who was being interrogated repeatedly called the police station to determine if her son was there and each time was told that he was not. The defendant confessed to murder, was convicted and appealed. The Court of Appeals reversed his conviction, holding that "it is impermissible for the police to use a confession, even if it be otherwise voluntary, obtained from a seventeen-year-old defendant when, in the course of extracting such confession, they have sealed off the most likely avenue by which the assistance of counsel may reach him by means of deception and trickery." *Id.* 347 *N.Y.S.*2d 187, 300 *N.E.*2d at 724. The Court of Appeals, observing that the police officers' behavior was "indefensible," suppressed the inculpatory statements "obtained by the police through tactics calculated to make certain that the defendant's parents will not take any steps to get him a lawyer." *Id.* 347 *N.Y.S.*2d 187, 300 *N.E.*2d at 725. *See also People v. Bevilacqua,* 45 *N.Y.*2d 508, 410 *N.Y.S.*2d 549, 382 *N.E.*2d 1326 (1978) (sup-

pressing statements made by eighteen-year-old defendant who was "isolated ... from two of his most likely avenues of assistance, his mother and his lawyer," thereby preventing defendant from getting legal advice before interrogation); *People v. Rivera,* 78 *A.D.*2d 556, 431 *N.Y.S.*2d 1015 (1980) (suppressing confessions made by juveniles whose parents were denied access thereby "isolat[ing them] from those ready to provide them assistance").

Illinois courts have determined that where a parent desires to be present during the interrogation of his or her minor child, police officers "have an affirmative duty to inform those actually questioning a juvenile of the parents' presence and request to see [his or] her child. And, in order to ensure the true voluntariness of a statement, those actually questioning the juvenile have an affirmative duty to stop the questioning and allow the parent to confer with [his or] her child." *People v. Brown,* 182 *Ill.App.*3d 1046, 131 *Ill.Dec.* 534, 538 *N.E.*2d 909 (1989). *See also In re Lashun H.,* 284 *Ill.App.*3d 545, 219 *Ill.Dec.* 823, 672 *N.E.*2d 331 (1996) (suppressing juvenile's confession where his mother's attempts to see her son "were clearly frustrated by the police so that they could create an intimidating atmosphere and obtain a confession"); *People v. Montanez,* 273 *Ill.App.*3d 844, 210 *Ill.Dec.* 295, 652 *N.E.*2d 1271 (1995) (same); *In re J.O.,* 231 *Ill.App.*3d 853, 173 *Ill.Dec.* 406, 596 *N.E.*2d 1285 (1992) (same); *People v. Knox,* 186 *Ill.App.*3d 808, 134 *Ill.Dec.* 564, 542 *N.E.*2d 910 (1989) (same).

The California Supreme Court, in *People v. Burton,* 6 *Cal.*3d 375, 99 *Cal.Rptr.* 1, 491 *P.*2d 793 (1971), held that the denial by police of a juvenile defendant's request to see his parent rendered his subsequent confession inadmissible. The court found that the defendant's "request to see his parents at or near the commencement of interrogation was an invocation of his Fifth Amendment privilege" against self-incrimination. *Id.* 99 *Cal.Rptr.* 1, 491 *P.*2d at 796.

Likewise, Florida and Montana have held that a juvenile's request to telephone or otherwise speak to a parent is tantamount to the invocation of his right to remain silent. *Sublette v. State,*

365 *So.*2d 775 (Fla.Dist.Ct.App.1978) (holding that juvenile's request to call parent is assertion of Fifth Amendment privilege against self-incrimination); *State v. Johnson,* 221 *Mont.* 503, 719 *P.*2d 1248 (1986) (same).

The second approach, which mandates that the State demonstrate that an interested adult was present during an interrogation, has been statutorily adopted in ten states. Those statutes render inadmissible any statement made during interrogation by a juvenile outside the presence of an interested adult and prohibit the waiver of the right to counsel by a juvenile unless that waiver is accompanied by a waiver of a parent or other interested adult. *See Colo.Rev.Stat. Ann.* § 19–2–511; *Ind.Code Ann.* § 31–32–5–1; *Iowa Code Ann.* § 232.11; *Miss.Code Ann.* § 43–21–311; *Mont. Code Ann.* § 41–5–331; *N.H. Stat. Ann.* § 169–B:12; *N.D. Cent. Code* § 27–20–26; *Okla. Stat. Ann.* tit. 10 § 7003–3.7; *Tex. Fam. Code Ann.* § 51.09; *W. Va.Code* § 49–5–8(d). Those jurisdictions consistently have held that any statements made during custodial interrogation are inadmissible where a juvenile's parents are absent. *People v. J.D.,* 989 *P.*2d 762 (Colo.1999) (observing that statute requires notification of parents when juvenile is taken into custody and requires suppression of statements or admissions made by juvenile during custodial interrogation where interested adult is not present); *In re L.B.,* 33 *Colo.App.* 1, 513 *P.*2d 1069, 1070 (1973) (holding inadmissible statements of juvenile made where parent who was incarcerated for drunkenness was brought to juvenile's interrogation; although interested adult must be present, mere physical presence of parent is insufficient); *Lewis v. State,* 259 *Ind.* 431, 288 *N.E.*2d 138 (1972) (adopting rule that child may not waive right to counsel until child has had opportunity to consult with interested adult); *G.J. v. State,* 716 *N.E.*2d 475 (Ind.App.1999) (recognizing that child has right to have his parents present during custodial interrogation); *State v. Walker,* 352 *N.W.*2d 239 (Iowa 1984) (statute implicitly requires that, after notification of parents, police wait before interrogation to allow parents time to come to station and consult with child); *M.A.C. v. Harrison County Family Court,* 566 *So.*2d 472 (Miss.1990) (hold-

ing that deliberate exclusion of parents from child's interrogation renders statements inadmissible); *Ezell v. State*, 489 *P.*2d 781, 783–84 (Okla.Crim.App.1971) (finding that neither mother nor legal guardian of juvenile defendant was "capable of protecting defendant's constitutional rights," thereby rendering juvenile's confession inadmissible); *Edward C. v. Collings*, 193 *Mont.* 426, 632 *P.*2d 325 (1981) (holding that juveniles may not waive counsel unless parent or guardian also waives that right); *In re D.S.*, 263 *N.W.*2d 114 (N.D.1978) (holding that child must be represented by parent, guardian or counsel during interrogation for statement to be admissible; child's right to counsel cannot be waived by unrepresented child); *Eddings v. State*, 842 *P.*2d 759 (Okla.Crim. App.1992) (holding that statements elicited during custodial interrogation of child are inadmissible unless parents are present); *In re L.M.*, 993 *S.W.*2d 276 (Tex.App.1999) (holding that juveniles are not permitted to waive privilege against self-incrimination unless friendly adult is present and gives guidance); *In re E.T.C.*, 141 *Vt.* 375, 449 *A.*2d 937 (1982) (interpreting Vermont Constitution to require presence of interested adult during custodial interrogation of juvenile); *State ex rel. J.M. v. Taylor*, 166 *W.Va.* 511, 276 *S.E.*2d 199 (1981) (holding that juveniles may waive right to counsel only upon advice of counsel). *Cf. Sevion v. State*, 620 *N.E.*2d 736 (Ind.App.1993) (finding that seventeen-year-old had opportunity to consult with custodian so statements were admissible); *People v. Thomas*, 223 *A.D.*2d 612, 636 *N.Y.S.*2d 830 (1996) (finding no evidence that police used deception or trickery to isolate seventeen-year-old defendant from his parents so statement admissible); *Hickman v. State*, 654 *N.E.*2d 278, 281 (Ind. App.1995) (declining to exclude statements of almost eighteen-year-old defendant who had opportunity to consult with parent).

Eight other states statutorily require police to notify a minor's guardian or custodian immediately if a minor is taken into custody. *See Del.Code Ann.* tit. 10 § 1004; *Idaho Code* § 20–516; 705 *Ill. Comp. Stat. Ann.* § 405/5–405; *Mo.Rev.Stat.* § 211.131(2); *Neb. Rev.Stat.* § 43–250; *Nev.Rev.Stat.* § 62.170; *N.Y.Crim. Proc. Law* § 140.20 (McKinney); *S.C.Code Ann.* § 20–7–7205. Statements

made by juveniles during custodial interrogation where law enforcement authorities have violated those statutes consistently are suppressed. *See People v. Gardner,* 257 *A.D.*2d 675, 683 *N.Y.S.*2d 351 (1999) (observing that police are statutorily required to notify immediately guardian or parent of juvenile upon her arrest or statements made are inadmissible); *Barrow v. State,* 749 *A.*2d 1230 (Del.2000) (suppressing statements by juvenile because parental notification statute violated); *Palmer v. State,* 626 *A.*2d 1358 (Del.1993) (reversing seventeen-year-old juvenile's conviction because of police's failure to timely notify custodian violated mandate of statute and constituted deprivation of defendant's right to due process and self-incrimination rights); *In re D.B.,* 303 *Ill.App.*3d 412, 237 *Ill.Dec.* 3, 708 *N.E.*2d 806, 811 (1999) (noting that purpose of law requiring immediate notification of parents when juvenile taken into custody "is to permit, where possible, a parent to confer with and counsel the juvenile before interrogation and confession"); *Brown, supra,* 182 *Ill.App.*3d 1046, 131 *Ill.Dec.* 534, 538 *N.E.*2d 909 (holding that police's "flagrant[ ] violat[ion]" of statute requiring officers to make reasonable attempts to notify parents among factors causing court to determine that defendant's statement was involuntary and therefore should be suppressed); *A Minor Boy v. State,* 89 *Nev.* 564, 517 *P.*2d 183 (1973) (holding that consequence of deliberate violation of parental notification statute is suppression of statements made by defendant); *State v. Johnson,* 221 *Mont.* 503, 719 *P.*2d 1248 (1986) (holding that juvenile's request for parent is invocation of Fifth Amendment rights); *Sublette, supra,* 365 *So.*2d 775 (observing that police officers' failure to comply with statute requiring that parents be immediately notified upon arrest of child renders any statements made by juvenile inadmissible); *M.M. v. State,* 827 *P.*2d 1117 (Wyo.1992) (noting that law enforcement officials must comply with parental notification statute for juveniles' statements to be admissible); *M.A.C. v. Harrison County Family Court, supra,* 566 *So.*2d 472 (finding that police's blatant violation of juvenile's statutory right to have parent present during interrogation required exclusion of any statements made). *Cf. A Minor Boy v.*

*State*, 91 *Nev.* 456, 537 *P.*2d 477 (1975) (finding that mandates of notification statute were satisfied where "all reasonable efforts" were made by police to contact defendant's mother and not more than one hour could have elapsed before she was contacted and there was "no evidence of any intentional delay in contacting" defendant's mother); *In re Williams*, 265 *S.C.* 295, 217 *S.E.*2d 719 (1975) (holding that statements are admissible in absence of showing that parents were not notified in accordance with statute). The courts in those states presumably would also suppress statements made where a parent is deliberately excluded from the juvenile's interrogation.

New Jersey courts previously have acknowledged the connection between the right of a juvenile to have a parent present during interrogation and the voluntariness of a confession. In *In re Carlo*, 48 *N.J.* 224, 225 *A.*2d 110 (1966), this Court declared that the "constitutional safeguard of voluntariness" applies to confessions in juvenile proceedings. *Id.* at 235, 225 *A.*2d 110. There, two boys, age thirteen and fifteen, were arrested and interrogated separately. *Id.* at 229, 225 *A.*2d 110. After over five hours of questioning, they confessed to killing a young girl. *Ibid.* All throughout the interrogation the police refused to allow the boys' parents to see the boys. *Id.* at 232, 225 *A.*2d 110. Those refusals "evidence[d] to us an approach by the police which rode roughshod over the parent-child relationship in order to obtain confessions by intimidation," *id.* at 240, 225 *A.*2d 110, and we observed that the "refusal by the police ... to permit the parents access to their sons during the interrogations might well be sufficient in itself to show that the confessions were involuntary even though, as the police testified, the boys did not wish to see their parents." *Id.* at 241, 225 *A.*2d 110.

We revisited the issue of juvenile confessions in *In re S.H.*, 61 *N.J.* 108, 293 *A.*2d 181 (1972), in which the police sent the ten-year-old suspect's father away from the police station before they began questioning the suspect. *Id.* at 114, 293 *A.*2d 181. The suspect was then interrogated for ninety minutes after which he

confessed to causing the drowning of a six-year-old by pushing him into a canal. Holding that the juvenile's confession was improperly admitted into evidence, we emphasized that no child should be interviewed except in the presence of his parent or guardian. *Id.* at 114–15, 293 *A.*2d 181. We concluded that the giving of *Miranda* warnings to a ten-year-old boy "is undoubtedly meaningless" because "[s]uch a boy certainly lacks the capability to fully understand the meaning of his rights." *Id.* at 115, 293 *A.*2d 181.

A survey of the law of both this State and those other states that have addressed the issue thus reveals a clear consensus favoring protection of juveniles' rights by requiring the presence and active participation of a parent or guardian during the interrogation of a juvenile.

The Court acknowledges that it finds it "difficult ... to envision prosecutors successfully carrying their burdens in future cases in which there has been some deliberate exclusion of a juvenile's parents or legal guardian from the interrogation." *Ante* at 318, 748 *A.*2d at 1116. The Court further observes that, applying a totality of the circumstances test, "when there has been a deliberate exclusion of a parent or legal guardian from the interrogation room ..., that confession almost invariably will be suppressed." *Ante* at 320, 748 *A.*2d at 1117. That formulation, however, permits a trial court to conclude under the totality of the circumstances standard that a juvenile's statements were made voluntarily where the juvenile's parents have been deliberately excluded from the interrogation of their child. In my view, that lack of clarity is inexplicable in the context of the consistent rejection by courts throughout the country of statements made where a parent was excluded.

Moreover, the implementation of a bright-line rule that requires the suppression of statements made by a juvenile whose parents have been deliberately excluded from their child's interrogation would discourage police officers from preventing family contact. Such a rule is clear and practical. It explicitly defines limits

within which police officials can work, better protects the rights of New Jersey's juveniles and decreases the likelihood that the police will attempt to evade that which the law requires.

## III

The Court also neglects to accord adequate significance to the parents' role in assisting juveniles to vindicate their constitutional right to counsel. In *Gallegos v. Colorado,* 370 *U.S.* 49, 82 *S.Ct.* 1209, 8 *L.Ed.*2d 325 (1962), the United States Supreme Court noted that in juvenile matters courts deal with "a person who is not equal to the police in knowledge and understanding of the consequence of the questions and answers being recorded and who is unable to know how to protect his own interests or how to get the benefits of his constitutional rights." *Id.* at 54, 82 *S.Ct.* at 1212–13, 8 *L.Ed.*2d at 328. This is so, the Court stated, because a young boy

> cannot be compared with an adult in full possession of his senses and knowledgeable of the consequences of his admissions. He would have no way of knowing what the consequences of his confession were without advice as to his rights—from someone concerned with securing him those rights—and without the aid of more mature judgment as to the steps he should take in the predicament in which he found himself.
>
> [*Id.* at 54, 82 *S.Ct.* at 1212–13, 8 *L.Ed.*2d at 329.]

The Supreme Court noted that "[a]dult advice would [ ] put [a juvenile] on a less unequal footing with interrogators" and that "[w]ithout some adult protection against this inequality, a [juvenile] would not be able to know, let alone assert, such constitutional rights as he had." *Ibid.*

Parents play a critical role in aiding a juvenile during custodial interrogation. As the majority notes, a parent is "in a position to assist juveniles in understanding their rights, acting intelligently in waiving those rights, and otherwise remaining calm in the face of an interrogation." *Ante* at 315, 748 *A.*2d at 1114 (citing *Gallegos,* 370 *U.S.* at 54, 82 *S.Ct.* at 1212–13, 8 *L.Ed.*2d at 328–29.) A juvenile "needs counsel and support if he is not to become the victim first of fear, then of panic. He needs someone on whom to

lean lest the overpowering presence of the law, as he knows it, crush him." *Haley v. Ohio*, 332 *U.S.* 596, 599–600, 68 *S.Ct.* 302, 303, 92 *L.Ed.* 224 (1948). The adult advice necessary to put juvenile defendants "on a less unequal footing with [their] interrogators," *Gallegos, supra*, 370 *U.S.* at 54, 82 *S.Ct.* at 1212–13, 8 *L.Ed.*2d at 329, typically will come either from the juvenile's parents or a lawyer. Juveniles would ordinarily be unable to obtain the assistance of counsel without the assistance of their parents.

Even as it acknowledges the critical role that a parent plays in aiding a juvenile during custodial interrogation, however, the Court distinguishes this case from *State v. Reed*, 133 *N.J.* 237, 627 *A.*2d 630 (1993), in which we held that where the police deliberately excluded a suspect's counsel from the interrogation room, the suspect's waiver of his privilege against self-incrimination was invalid. We based our holding in *Reed* in large part on the "critical position in our legal system" that a lawyer holds. *Id.* at 262, 627 *A.*2d 630 (quoting *Fare v. Michael C.*, 442 *U.S.* 707, 719, 99 *S.Ct.* 2560, 2568–69, 61 *L.Ed.*2d 197, 208–09 (1979)).

In my view, a parent holds an equally "critical position in our legal system," *ibid.*, a position that is indispensable if a juvenile in custody is to have a realistic opportunity to exercise the right to counsel. A juvenile's right to the assistance of counsel is hollow indeed unless a parent is present to assist the juvenile in retaining and paying for a lawyer. In that context, the deliberate exclusion of parents from a juvenile's interrogation room is the *de facto* equivalent of a denial of the right to counsel.

In *People v. Burton, supra*, 6 *Cal.*3d 375, 99 *Cal.Rptr.* 1, 491 *P.*2d 793, the California Supreme Court best expressed the connection between the right to counsel and the right to have a parent present during interrogation:

> It appears to us most likely and most normal that a minor who wants help on how to conduct himself with the police and wishes to indicate that he does not want to proceed without such help would express such desire by requesting to see his parents. For adults, removed from the protective ambit of parental guidance, the desire for help naturally manifests in a request for an attorney. For minors, it would seem that the desire for help naturally manifests in a request for parents.

It would certainly severely restrict the "protective devices" required by *Miranda* in cases where the suspects are minors if the only call for help which is to be deemed an invocation of the privilege is the call for an attorney. It is fatuous to assume that a minor in custody will be in a position to call an attorney for assistance and it is unrealistic to attribute no significance to his call for help from the only person to whom he normally looks—a parent or guardian.

[*Id.* 99 *Cal.Rptr.* 1, 491 *P.*2d at 797–98.]

Although the Court today adopts a *per se* rule suppressing statements made by those under the age of fourteen whose parents are not present during interrogation, a sixteen-year-old juvenile is hardly in a better position to get counsel than is a thirteen-year-old. In the eyes of a juvenile, the request to consult a parent may be essentially equivalent to a request to consult an attorney. *Burton, supra,* 6 *Cal.*3d 375, 99 *Cal.Rptr.* 1, 491 *P.*2d 793. Most juveniles do not know how to engage a lawyer without the assistance of a parent. Juveniles typically have neither the financial wherewithal necessary to retain counsel nor the requisite knowledge of the appropriate steps to take to find a lawyer suitable to their needs. Police tactics that deliberately deprive juveniles of contact with their parents effectively deprive them of their right to counsel. *Ibid.*; *Sublette, supra.*

## IV

The constitutional rights at stake in juvenile interrogations require clear, unambiguous rules to provide the necessary guidance to law enforcement officials. Although I concur in the Court's judgment, I would hold that in future cases the deliberate exclusion of parents by police officers from a juvenile's interrogation requires suppression of the juvenile's incriminating statements to police officers.

*For affirmance*—Chief Justice PORITZ and Justices O'HERN, GARIBALDI, STEIN, COLEMAN, LONG, and VERNIERO—7.

*Opposed*—None.