**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5268-16T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

TYRICK MIRANDA, a/k/a
MICHAEL GAINES, and
TYRICK N. MIRANDA,

     Defendant-Appellant.

_____

Argued November 6, 2019 – Decided January 2, 2020

Before Judges Yannotti, Hoffman and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment Nos. 15-02-0248 and 16-06-1052.

C. Patrick Thomas, Designated Counsel, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Michael A. Kaplan, Robert J. Kipnees and C. Patrick Thomas, on the briefs).

Joie D. Piderit, Special Deputy Attorney General/ Acting Assistant Prosecutor, argued the cause for

respondent (Christopher L.C. Kuberiet, Acting Middlesex County Prosecutor, attorney; Joie D. Piderit, of counsel and on the brief).

PER CURIAM

Defendant was tried before a jury and found guilty of third-degree conspiracy to commit burglary, third-degree burglary, third-degree conspiracy to commit theft by unlawful taking, seven counts of third-degree theft by unlawful taking, and seven counts of second-degree certain persons not to possess weapons. Defendant appeals from the judgments of conviction dated July 13, 2017. We affirm.

I.

Defendant and Laquawn Hill were charged under Indictment No. 15-02-0248 with: second-degree conspiracy to commit robbery, N.J.S.A. 2C:5-2(a), N.J.S.A. 2C:18-2 (count one); second-degree burglary while armed with a deadly weapon, N.J.S.A. 2C:18-2(a)(1) (count two); third-degree conspiracy to commit theft, N.J.S.A. 2C:5-2(a), N.J.S.A. 2C:20-3 (count three); third-degree theft of a Colt Python .357 handgun, N.J.S.A. 2C:20-3(a) (count four); second-degree unlawful possession of a Colt Python .357 handgun, N.J.S.A. 2C:39-5(b) (count five); third-degree theft of a Kel-tech 9mm sub-2000 rifle, N.J.S.A. 2C:20-3(a) (count six); third-degree unlawful possession of a Kel-tech 9mm

sub-2000 rifle, N.J.S.A. 2C:39-5(c) (count seven); third-degree theft of a Mossberg Maverick 12-gauge shotgun, N.J.S.A. 2C:20-3(a) (count eight); third-degree unlawful possession of a Mossberg Maverick 12-gauge shotgun, N.J.S.A. 2C:39-5(c) (count nine); third-degree theft of a Montgomery Ward 20-gauge pump shotgun, N.J.S.A. 2C:20-3(a) (count ten); third-degree unlawful possession of a Montgomery Ward 20-gauge pump shotgun, N.J.S.A. 2C:39-5(c) (count eleven); third-degree theft of a .22-caliber bolt action Savage rifle, N.J.S.A. 2C:20-3(a) (count twelve); third-degree unlawful possession of a .22-caliber bolt action Savage rifle, N.J.S.A. 2C:39-5(c) (count thirteen); third-degree theft of an Erma EM-1 carbine rifle, N.J.S.A. 2C:20-3(a) (count fourteen); third-degree unlawful possession of an Erma EM-1 carbine rifle, N.J.S.A. 2C:39-5(c) (count fifteen); third-degree theft of a Remington .22 pump action octagon barrel rifle, N.J.S.A. 2C:20-3(a) (count sixteen); third-degree unlawful possession of a Remington .22 pump action octagon barrel rifle, N.J.S.A. 2C:39-5(c) (count seventeen); and third-degree theft of certain movable property, with a value in excess of $500, N.J.S.A. 2C:20-3(a) (count eighteen).

In addition, defendant was charged in Indictment No. 16-06-1052 with seven counts of certain persons not to possess weapons, N.J.S.A. 2C:39-7(b)(1). The charges pertain to the possession of the Colt Python .357 handgun (count

3

one); Kel-tech 9mm sub-2000 rifle (count two); Mossberg Maverick 12-gauge shotgun (count three); Montgomery Ward 20-gauge pump shotgun (count four); .22 caliber bolt action Savage rifle (count five), Erma EM-1 carbine rifle (count six), and Remington .22 pump action octagon barrel rifle (count seven).

## II.

Defendant first was tried before a jury on the charges in Indictment No. 15-02-0248. The State presented evidence showing that in 2013, M.H. and her husband W.H. lived in a single-family home in Edison.[1] C.D. is M.H.'s biological daughter and she lived with a friend in New Brunswick. In 2013, M.H. and W.H. allowed C.D. to come to their home to do laundry. Ordinarily, M.H. and W.H. did not give C.D. a key to the home or permit her to bring others there without permission. At the time, C.D. was drinking alcohol, smoking marijuana, and using other drugs.

On December 24, 2013, M.H. and W.H. went to Florida for a vacation. They planned to return on December 31, 2013. M.H. and W.H. permitted C.D., M.H.'s other adult children, and S.K., to enter the home while they were away. S.K., a friend of the family, lived in a basement apartment in the home. On

---

[1] We use initials to identify the victims and other persons involved to protect their privacy.

A-5268-16T1

December 27, 2013, C.D. brought defendant to M.H. and W.H.'s residence. C.D. and defendant were friends and they planned to do laundry.

M.H. and W.H.'s bedroom was adjacent to the living room. C.D. took a shower while defendant remained in the living room. W.H. was the legal owner of seven guns, and he kept them in the bedroom, under the bed. Defendant asked C.D. about the gun cabinet in the house and where M.H. and W.H. had gone. C.D. told him M.H. and W.H. were in Florida.

That evening, at around 10:00 p.m., C.D. drove defendant to his grandmother's home in New Brunswick. Until 3:00 a.m. or 4:00 a.m., defendant repeatedly sent C.D. text messages to make arrangements so they could get together. C.D. characterized the exchanges as "unusual." Defendant later admitted he contacted C.D. to ensure she would not find him in M.H. and W.H.'s home.

On December 28, 2013, C.D. returned to the home with two friends and noticed her mother's jewelry box was open and some of the bedroom drawers were opened. C.D. did not, however, inform the police of the apparent burglary. She said she was worried her mother would blame her for the theft. It seems C.D. had previously taken some of her mother's property without her permission.

A-5268-16T1

C.D. contacted defendant because she thought he was responsible for the theft, but defendant said he did not know what she was talking about.

On December 31, 2013, M.H. and W.H. returned to their home and noticed that seven firearms and pieces of jewelry worth about $500 were missing. M.H. and W.H. reported the thefts to the police. Officer Paul Pappas of the Edison Police Department (EPD) was dispatched to the residence and found no evidence of a forced entry.

Steven Todd of the EPD was the lead detective on the investigation. Todd spoke to W.H., C.D., S.K., and R.G., one of C.D.'s friends. W.H. and C.D. provided Todd with a phone number, which was linked to defendant. Todd obtained "data warrants" for records pertaining to defendant's and C.D.'s phones.

An analysis of the records showed that on the evening of December 27, 2013, phone calls were exchanged between defendant's phone and C.D.'s phone, while defendant's phone was in the vicinity of M.H. and W.H.'s residence. In addition, information from a cell tower showed that defendant's phone had been used near M.H. and W.H.'s residence at 2:12 a.m., 3:31 a.m., and 4:09 a.m.

On May 6, 2015, the police obtained a warrant and arrested defendant in New Brunswick. Defendant was taken to the Edison police headquarters, where

Todd informed him of his Miranda[2] rights, which he waived. In response to questioning, defendant acknowledged he was with C.D. at M.H. and W.H.'s home while C.D. did her laundry. He said he was with Hill and an unidentified male when they took items of property out of the house.

Defendant also admitted that he set up the theft. He stated that Hill and the unidentified male gave him about $200 and told him they would give him more money after the burglary. Defendant said he knew the guns were stolen. He stated, however, that he did not help carry the guns out of the house. He claimed he remained in the car while Hill and the unidentified male entered the house, but he later admitted he was in the house when the guns were taken.

In addition, defendant stated that after Hill and the unidentified male took the guns, he got into the car with them and drove to New Brunswick. They later returned to the house and took the jewelry. Defendant said he was not present when Hill and the unidentified male stole the jewelry. He stated, however, that he had been at the residence three times.

The jury found defendant guilty of third-degree conspiracy to commit burglary (count one, as amended); third-degree burglary (count two, as amended); third-degree conspiracy to commit theft (count three); and third-

---

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

degree theft of the firearms (counts four, six, eight, ten, twelve, fourteen, and sixteen). The jury also found defendant not guilty of second-degree unlawful possession of the firearms (counts five, seven, nine, eleven, thirteen, fifteen, and seventeen); and third-degree theft of the jewelry (count eighteen).

The State then advised the court that it intended to proceed with the trial of the certain persons charges in Indictment No. 16-06-1052. Defendant moved to dismiss those charges in light of the jury's finding that defendant was not guilty on the counts charging unlawful possession of the weapons. The trial judge denied the motion.

Defendant then was tried before the same jury on the certain persons charges. The parties generally relied upon the evidence presented in the first phase of the trial proceedings, but the State also presented testimony that defendant had been convicted of an offense in 2007. The parties stipulated that the offense was a predicate offense for the certain persons charges. The jury found defendant guilty on all seven counts.

Defendant thereafter filed a motion to set aside the jury's verdict on the certain persons charges. Among other contentions, defendant argued that the verdict was against the weight of the evidence and violated his right against

double jeopardy.  The judge filed a written opinion and order dated June 6, 2017, denying the motion.

Thereafter, the trial judge granted the State's motion for an extended term pursuant to N.J.S.A. 2C:43-7.  Defendant was sentenced on July 11, 2017.  Defendant appeals from the judgments of conviction dated July 13, 2017, and argues:

> POINT I
> THE TRIAL COURT ERRED BY IMPROPERLY ALLOWING THE CERTAIN PERSONS TRIAL TO GO FORWARD AFTER [DEFENDANT] WAS ACQUITTED OF UNLAWFUL POSSESSION.
>
> POINT II
> THERE WAS INSUFFICIENT EVIDENCE FOR A RATIONAL TRIER OF FACT TO HAVE FOUND THAT THE STATE HAD PROVEN THE ESSENTIAL ELEMENTS OF THE BURGLARY AND THEFT BY UNLAWFUL COUNTS BEYOND A REASONABLE DOUBT.
>
> POINT III
> THE TRIAL COURT ERRED BY ADMITTING INTO EVIDENCE [DEFENDANT'S] STATEMENT TO THE POLICE, WHICH WAS GIVEN WITHOUT A SUFFICIENT MIRANDA WARNING AND AFTER [DEFENDANT] REQUESTED COUNSEL.
>
> POINT IV
> THE TRIAL COURT ERRED BY IMPROPERLY ADMITTING EVIDENCE OF [DEFENDANT'S] PRIOR DRUG DEALING, WHICH DENIED HIM A FAIR TRIAL.

POINT V
THE SENTENCE IMPOSED WAS MANIFESTLY
EXCESSIVE.

III.

We turn first to defendant's contention that the trial judge erred by allowing the State to proceed with the trial on the certain persons offenses in Indictment No. 16-06-1052. Defendant argues that the judge should have dismissed those charges in light of the jury's finding that defendant was not guilty of unlawful possession of the firearms in the first phase of the trial proceedings.

"When an appellate court reviews a trial court's analysis of a legal issue, it does not owe any special deference to the trial court's legal interpretation." State v. Miles, 229 N.J. 83, 90 (2017). Here, defendant argues that the trial court erred as a matter of law in denying his application to dismiss the certain persons charges. Therefore, we review the trial court's determination de novo. Ibid.

In her decision denying defendant's motion to dismiss the certain persons charges, the judge pointed out that while the jury found defendant not guilty of unlawfully possessing the guns, those charges required proof that defendant possessed the weapons without obtaining a permit to carry or a firearms purchaser identification card. See N.J.S.A. 2C:39-5(b), (c)(1). The judge stated

that she could not speculate on the basis for the jury's verdict on the gun possession charges.

The judge also noted that defendant had been found guilty of theft of the weapons, which required the jury to find he had taken or exercised unlawful "control" over the movable property of another person. See N.J.S.A. 2C:20-3(a). The judge concluded that the State could proceed to trial on the certain persons charges based on the jury's finding that defendant was guilty of theft of the weapons.

The judge again addressed this issue when defendant filed a motion to set aside the jury's verdict on the certain persons charges. In the opinion and order dated June 6, 2017, the judge concluded that the trial on these charges did not violate defendant's right against double jeopardy under the Fifth Amendment to the United States Constitution and the parallel provision of the New Jersey Constitution. The judge found that unlawful possession of a weapon and the certain persons charge have different elements and are not the same offense for double jeopardy purposes.

A. Collateral Estoppel.

On appeal, defendant argues the trial judge erred by allowing the State to proceed with the trial of the certain persons charges because the jury found he

did not unlawfully possess the weapons. He contends collateral estoppel applied and barred further litigation of this issue.

Collateral estoppel is "the principle that bars relitigation between the same parties of issues actually determined at a previous trial." Ashe v. Swenson, 397 U.S. 436, 442 (1970); see also State v. Gonzalez, 75 N.J. 181, 192 (1977). "Collateral estoppel has been used in criminal prosecutions to complement the constitutional protection against double jeopardy by protecting defendants against multiple prosecutions for different 'offenses' based on the same set of facts." Id. at 192.

For collateral estoppel to apply in a criminal proceeding, the defendant must establish that:

> (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.
>
> [State v. Brown, 394 N.J. Super. 492, 502 (App. Div. 2007) (quoting First Union Nat'l Bank v. Penn Salem Marina, 190 N.J. 342, 352 (2007)).]

A-5268-16T1

The doctrine "usually precludes prosecution for an offense only after a defendant has been previously placed in jeopardy for another offense based on the same issue." Id. at 503.

"[W]hen a defendant is charged at the same time with unlawful possession of a weapon and possession of a weapon by a convicted felon . . . , [t]he two charges must be tried separately since proof that defendant was a convicted felon . . . clearly tends to prejudice the jury in considering the former [charge]." State v. Ragland, 105 N.J. 189, 193 (1986). However, for purposes of applying collateral estoppel, "[t]he first part of a bifurcated trial is not a 'prior action' with respect to the second part of the trial, given that the same jury sits throughout both parts." State v. Ragland, 198 N.J. Super. 330, 336 (App. Div. 1985).

Here, the charges in the two indictments were bifurcated in accordance with Ragland and tried sequentially before the same jury. Thus, there was no "previous trial" or "prior proceeding" to which estoppel could attach. See Ashe, 397 U.S. at 442; Brown, 394 N.J. Super. at 502. We conclude collateral estoppel did not bar the State from proceeding to trial on the certain persons charges.

B. Double Jeopardy.

Next, defendant argues that because the jury found him not guilty of unlawful possession of the weapons, the trial on the certain persons charges

13

violated his right against double jeopardy.

"The Double Jeopardy Clause contains three protections for defendants." Miles, 229 N.J. at 92. "It protects against (1) 'a second prosecution for the same offense after acquittal,' (2) 'a second prosecution for the same offense after conviction,' and (3) 'multiple punishments for the same offense.'" Ibid. (quoting North Carolina v. Pearce, 395 U.S. 711, 717 (1969)). The "prime concern" in a double jeopardy case is "whether the second prosecution is for the same offense involved in the first." Id. at 93 (quoting State v. Yoskowitz, 116 N.J. 679, 689 (1989)).

Here, the proceedings on the certain persons charges were not "a second prosecution" for double jeopardy purposes. The charges in the indictments are part of a single proceeding. The charges were bifurcated pursuant to Ragland and tried sequentially before the same jury. Therefore, the jury's verdict on the charges of unlawful possession of the weapons in the first phase of the proceeding did not preclude the trial of the certain persons charges in the second phase.

Even if the proceeding on the certain persons charges is deemed to be a "second prosecution," the trial of those charges was not barred on double jeopardy grounds. In New Jersey, the courts apply the "the same-elements test"

14

for purposes of determining whether a second prosecution is barred by double jeopardy principles. Id. at 96.

Therefore, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Id. at 93 (quoting Blockburger v. United States, 284 U.S. 299, 304 (1932)). "In other words, if each statute at issue requires proof of an element that the other does not, they do not constitute the same offense and a second prosecution may proceed." Ibid.

Here, the trial judge correctly concluded that double jeopardy principles did not bar defendant's prosecution on the certain persons charges because those charges and the charges of unlawful possession of weapons have different elements. The judge noted that the certain persons statute requires proof that defendant had a "prior qualifying conviction." See N.J.S.A. 2C:39-7(b)(1). On the other hand, unlawful possession of a handgun, rifles or a shotgun requires proof that defendant did not have a carry permit or firearms purchaser identification card. See N.J.S.A. 2C:39-5(b), (c)(1).

The trial judge correctly applied the "same elements" test under Miles and Blockburger. The judge correctly determined that the weapons possession

charges and the certain persons charges have different elements and do not constitute the same offense. Therefore, the jury's verdict on the weapons possession charges did not preclude the trial on the certain persons charges.

C. Statutory Interpretation.

Defendant further argues that the trial judge erred by finding a person could be found guilty under N.J.S.A. 2C:39-7(b)(1) even if found not guilty of possession of the firearms in violation of N.J.S.A. 2C:39-5(b) and (c)(1) because under N.J.S.A. 2C:39-7(b)(1), a person is guilty of the offense if he "controls" or "possesses" the firearms. Defendant asserts that, under the criminal code, the act of possession encompasses the act of control.

The "paramount goal" of statutory interpretation is to carry out the Legislature's intent and "generally, the best indicator of that intent is the statutory language." DiProspero v. Penn, 183 N.J. 477, 492 (2005). We begin our analysis by "giving the words of the statute 'their ordinary meaning and significance.'" Nicholas v. Mynster, 213 N.J. 463, 480 (2013) (quoting DiProspero, 183 N.J. at 492).

Moreover, "[w]ords, phrases, and clauses cannot be viewed in isolation; all the parts of a statute must be read to give meaning to the whole of the statute." Ibid. In addition, "[w]hen the language in a statute 'is clear and unambiguous,

16

and susceptible to only one interpretation,' courts should not look 'to extrinsic interpretative aids.'" Burnett v. Cty. of Bergen, 198 N.J. 408, 421 (2009) (quoting Lozano v. Frank DeLuca Constr., 178 N.J. 513, 522 (2004)).

Here, the Legislature provided in N.J.S.A. 2C:39-7(b)(1) that a person is guilty of a crime of the second degree if he has been convicted of a qualifying offense and "purchases, owns, possesses or controls" a firearm (emphasis added). The Legislature specifically chose to use both "possesses" and "controls" in describing this offense.

We must assume the Legislature intended for these terms to have distinct meanings. Had the Legislature intended otherwise, it would not have included the word "controls" in the statute. We therefore reject defendant's contention that under N.J.S.A. 2C:39-7(b)(1), the terms "possess" and "control" have the same meaning.

## IV.

Defendant argues there was insufficient evidence for the jury to find the State had proven the elements of burglary and theft beyond a reasonable doubt. We note that defendant did not raise this issue in the trial court.

In considering whether there is sufficient evidence to support a conviction, "[t]he scope of [this court's] review is limited and deferential." State

v. Reddish, 181 N.J. 553, 620 (2004). The court must determine "whether, viewing the State's evidence in its entirety, be that evidence direct or circumstantial, and giving the State the benefit of all its favorable testimony as well as of . . . favorable inferences . . . , a reasonable jury could find guilt of the charge beyond a reasonable doubt." Ibid. (quoting State v. Reyes, 50 N.J. 454, 459 (1967)).

On appeal, defendant argues the jury could not find that he committed the burglary because there was insufficient evidence to establish he entered the home without permission. In addition, defendant argues the jury could not find he committed the theft because in his statement, he asserted that he did not help carry, touch, or possess any of the stolen property.

However, in his statement to the police, defendant admitted he was in the home when the weapons were stolen. Defendant also admitted he "directed" Hill and the unidentified male, who had entered the home and stolen certain property. In addition, defendant stated he later returned to the house with Hill and the unidentified male and took additional property. We conclude there was sufficient evidence for the jury to find that defendant committed burglary.

In addition, although defendant claims he did not touch the firearms, the evidence shows that he was in the car at the time Hill and the unidentified male

took the firearms. Moreover, defendant was charged as an accomplice to Hill and the unidentified male. We conclude there was sufficient evidence for the jury to find that defendant committed theft.

V.

Defendant further argues that the trial judge erred by denying his motion to suppress the statements he provided to Detective Todd. He contends the detective did not provide him with sufficient <u>Miranda</u> warnings and questioned him after he requested counsel.

"The right against self-incrimination is guaranteed by the Fifth Amendment to the United States Constitution and [New Jersey]'s law, now embodied in statute . . . and evidence rule . . . ." <u>State v. Nyhammer</u>, 197 N.J. 383, 399 (2009) (citing N.J.S.A. 2A:84A-19; N.J.R.E. 503). "<u>Miranda's</u> guiding principles inform New Jersey's privilege against self-incrimination." <u>State v. O'Neill</u>, 193 N.J. 148, 154 (2007).

In <u>Miranda</u>, "the United States Supreme Court imposed safeguards to ensure that an individual would have a meaningful opportunity to exercise his right against self-incrimination when subject to police interrogation . . . ." <u>Nyhammer</u>, 197 N.J. at 400 (citing <u>Miranda</u>, 384 U.S. at 477). "[A] person

subject to custodial interrogation 'must be adequately and effectively apprised of his rights.'" Ibid. (quoting Miranda, 384 U.S. at 467).

"[A] suspect is always free to waive the privilege and confess . . . [but] that waiver must never be the product of police coercion." State v. Presha, 163 N.J. 304, 313 (2000). Thus, for a confession to be admissible, the State must "prove beyond a reasonable doubt that the suspect's waiver . . . was knowing, intelligent, and voluntary . . . based upon an evaluation of the totality of the circumstances . . . ." State v. Yohnnson, 204 N.J. 43, 59 (2010) (internal citations and quotations omitted) (quoting Presha, 163 N.J. at 313).

On appeal, defendant contends he did not make a knowing, intelligent, and voluntary waiver of his Miranda rights. He asserts that when he was arrested, Todd did not provide him with Miranda warnings. He also asserts that Todd did not inform him of the "full spectrum of crimes he was suspected of committing." Defendant also contends Todd should have stopped the questioning when he asked him whether he needed an attorney.

Here, the judge found that Todd did not err by failing to inform defendant of his Miranda rights when he arrested him. The judge pointed out that Todd had informed defendant who he was, told him he was under arrest, and advised

him he had been arrested for conspiracy to commit burglary and theft from a residence on a specific street in Edison.

The judge found that once inside the interview room at police headquarters, "[d]efendant was read his <u>Miranda</u> rights and signed a <u>Miranda</u> form acknowledging that he was advised of his rights, understood his rights, and agreed to speak with [Todd] voluntarily." The judge stated that Todd "repeatedly informed" defendant he wanted to be sure defendant understood his rights. The judge rejected defendant's assertion that Todd wore defendant down by avoiding his inquiries about the difference between speaking without an attorney or thereafter.

The judge noted that defendant "appeared to be assessing the situation for himself to discover what evidence [Todd] had against him and he refused to admit anything until he had proof that there was evidence against him." The judge pointed out that Todd reminded defendant the interview would end as soon as he mentioned the word "lawyer." The judge also noted that defendant was thirty-two years old and had "familiarity with the criminal justice system" as a result of his extensive criminal record.

The judge found that defendant was not a "novice and surely ha[d] been informed of his rights before." In addition, the judge observed that the

interrogation lasted approximately sixty-five minutes, which was "not . . . an unreasonable amount of time," and the video of the interrogation "shows that the atmosphere during the interrogation [wa]s far from coercive."

The judge's factual findings are entitled to our deference because they are supported by sufficient credible evidence in the record. State v. Hubbard, 222 N.J. 249, 262 (2015). Moreover, the judge considered the totality of circumstances and correctly concluded that defendant made a knowing, intelligent, and voluntary waiver of his Miranda rights.

As noted, Todd informed defendant he was under arrest for conspiracy to commit burglary and theft with regard to a residence on a specific street in Edison. Todd did not withhold from defendant any facts essential to the waiver of his Miranda rights.

Furthermore, the judge found that "[a]t no point during the interview did [d]efendant invoke his right to counsel, wish to remain silent, or express a desire to terminate the interview." As noted, the record shows that Todd repeatedly reminded defendant he could request an attorney at any time, and at such time, the questioning would cease.

On appeal, defendant asserts he "asked [Todd] if he needed an attorney." He argues that Todd then was required to clarify whether defendant wanted an

attorney before proceeding.  The record shows that Todd reminded defendant he could request an attorney at any time.  The judge found that defendant did not invoke his right to an attorney during the interview.  The record supports that finding.

## VI.

Defendant also argues that the trial judge erred by admitting certain evidence at trial.  In support of this argument, defendant cites C.D.'s testimony that she met defendant through "drugs."  He contends this testimony improperly portrayed him as a drug dealer or user.  The testimony was only intended to establish C.D.'s relationship with defendant.  Furthermore, C.D. did not identify the drugs and she did not suggest that defendant was engaged in the illegal distribution of drugs.

Defendant also cites Todd's testimony that defendant's cellphone was registered to a person named T.C., who provided a false address.  He contends this testimony raised an inference that he was using a "burner phone" and it "associated" defendant with drugs and drug dealing.

Nothing in the record indicates, however, that a person who uses a fictitious name when registering a phone is linked to drugs or drug dealing. Moreover, the judge struck the comment and instructed the jury not to consider

it. Jurors are presumed to follow the court's instructions. State v. Nelson, 173 N.J. 417, 469 (2002) (citing State v. Manley, 54 N.J. 259, 270 (1969)).

## VII.

Defendant also contends his sentence is excessive. He argues that the judge erred by failing to acknowledge at least one mitigating factor. He also argues that the judge erred by imposing consecutive sentences.

We apply a "deferential" standard in our review of a lower court's sentencing determination. State v. Fuentes, 217 N.J. 57, 70 (2014). "The reviewing court must not substitute its judgment for that of the sentencing court." Ibid. We "must affirm the sentence unless (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) 'the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience.'" Ibid. (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).

Here, the trial judge found aggravating factors three (risk defendant will commit another offense); six (extent of defendant's prior criminal record and the seriousness of the offenses of which he has been convicted); and nine (need to

deter defendant and others from violating the law). N.J.S.A. 2C:44-1(a) (3), (6), (9). The judge found no mitigating factors.

The judge noted, among other things, that for about twenty years, defendant has been committing crimes. The judge pointed out that defendant has a "long list" of juvenile and municipal court convictions and two serious Superior Court convictions. The judge stated that defendant's criminal history has become more serious over time and found there was a risk he will commit another offense.

In addition, the judge noted that defendant had been found guilty of the theft of seven guns. The judge emphasized that these are serious offenses. The judge stated that there is a need to send "a strong message to this defendant and others that there are severe consequences for such actions." The judge added, "Stealing guns, putting them out on the street is something that our law takes seriously and rightfully so."

Therefore, on Indictment No. 15-02-0248, the judge merged count two with count one, and sentenced defendant to six years of incarceration. The judge also merged count three with count four, and sentenced defendant to a five-year prison term. In addition, the judge imposed five-year terms on counts six, eight, ten, twelve, fourteen, and sixteen. The judge ordered that the sentences would

be concurrent with each other, but consecutive to the sentences imposed on Indictment No. 16-06-1052. On that indictment, the judge sentenced defendant to concurrent five-year prison terms, each with a five-year period of parole ineligibility pursuant to N.J.S.A. 2C:39-7(b).

On appeal, defendant argues that the judge erred by failing to find mitigating factor eleven, N.J.S.A. 2C:44-1(b)(11) (imprisonment will cause excessive hardship to defendant or his dependents). He asserts he has one child who is under ten years old and another child who is just entering adulthood. He argues that imprisonment will deprive the children of their relationship with him. He also claims he is legally responsible to provide financial support for the children.

Defendant's contentions are without merit. The trial court considered defendant's family situation and found that it was not sufficient to establish a basis for mitigating factor eleven. It appears that defendant's children reside with their respective biological mothers. Moreover, there is no indication that defendant provided financial support for his children. Defendant presented insufficient evidence to support a finding that his incarceration would be an "excessive hardship" to himself or his dependents.

Defendant also contends the judge erred by imposing a consecutive sentence for the certain persons offenses. He claims that the burglary, theft, and certain persons convictions all arose from the same criminal episode and were not independent of each other.

In State v. Yarbough, 100 N.J. 627, 643-44 (1985), the Court established guidelines to assist the trial courts in determining whether to impose a consecutive sentence:

> (1) there can be no free crimes in a system for which the punishment shall fit the crime;
>
> (2) the reasons for imposing either a consecutive or concurrent sentence should be separately stated in the sentencing decision;
>
> (3) some reasons to be considered by the sentencing court should include facts relating to the crimes, including whether or not:
>
> > (a) the crimes and their objectives were predominantly independent of each other;
> >
> > (b) the crimes involved separate acts of violence or threats of violence;
> >
> > (c) the crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior;
> >
> > (d) any of the crimes involved multiple victims;

(e) the convictions for which the sentences are to be imposed are numerous;

(4) there should be no double counting of aggravating factors;

(5) successive terms for the same offense should not ordinarily be equal to the punishment for the first offense; and

(6) there should be an overall outer limit on the cumulation of consecutive sentences for multiple offenses not to exceed the sum of the longest terms (including an extended term, if eligible) that could be imposed for the two most serious offenses.

The sixth Yarbough factor has been superseded by legislation. See L. 1993, c. 223; State v. Brown, 138 N.J. 481, 559 (1994).

Here, the trial judge noted that defendant had participated in the burglary of a residence, during which seven firearms were stolen. The provisions of the code pertaining to burglary and theft crimes are intended to protect property, whereas the certain persons statute is intended to ensure that persons who have been previously convicted of serious crimes do not possess guns. The judge stated that defendant knew he was not permitted to possess guns, but brazenly stole seven firearms.

The judge found that this disregard of the law "is completely separate and distinct from the theft of the weapons itself because of defendant's status" as a

person who is not permitted to possess such weapons. The judge added that the number of the charges and their serious nature provides further support for a consecutive sentence.

The judge properly applied the <u>Yarbough</u> factors and provided a thorough explanation for her determination. The record supports the judge's decision to impose a consecutive sentence for the certain persons offenses.

We therefore conclude that the trial judge complied with the sentencing guidelines, and there is sufficient credible and competent evidence in the record for her findings. We also conclude defendant's sentence is a reasonable exercise of the court's discretion and it is not excessive.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION