**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3807-21

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

TRAVIS M. GALLO,

     Defendant-Appellant.

_____

> Argued May 7, 2024 – Decided September 18, 2024
>
> Before Judges Sumners and O'Connor.
>
> On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 14-12-1809.
>
> Kevin G. Roe argued the cause for appellant.
>
> Deepa S.Y. Jacobs, Senior Assistant Prosecutor, argued the cause for respondent (Mark Musella, Bergen County Prosecutor, attorney; Deepa S.Y. Jacobs, of counsel and on the brief).

The opinion of the court was delivered by

SUMNERS, JR., C.J.A.D.

Defendant Travis Gallo was seventeen years old when he was charged with stabbing to death his sister Teia and related weapons offenses. Tried as an adult, defendant pled open to first-degree murder of his sister, N.J.S.A. 2C:11-3(a)(1)(2); third-degree possession of a weapon (knife) for an unlawful purpose, N.J.S.A. 2C:39-4(d); fourth-degree unlawful possession of a weapon (knife), N.J.S.A. 2C:39-5(d); and third-degree hindering apprehension, N.J.S.A. 2C:29-3(b)(1). He was sentenced to fifty years' imprisonment subject to the No Early Release Act, N.J.S.A. 2C:43-7.2.

In defendant's appeal, he argues:

POINT I

THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO SUPRESS.

POINT II

THE TRIAL COURT ERRED IN FINDING DEFENDANT COMPETENT TO STAND TRIAL.

POINT III

THE SENTENCE IMPOSED BY THE TRIAL COURT WAS EXCESSIVE.

We reaffirm the motion court's order that defendant was competent to stand trial but reverse the court's order denying his motion to suppress his confession and vacate his guilty plea. Given our vacation of his plea, we need

2                                                          A-3807-21

not address his excessive sentence argument. We remand for further proceedings.

I.

On December 26, 2013, defendant was six weeks shy of his eighteenth birthday when Teia was killed at their Washington Township home. Defendant was one of twelve siblings—nine biological and three adopted. He was adopted by Dr. Robert Gallo and his wife when he was an infant. Since nursery school, defendant was placed in special education classes. However, about two months before Teia's death, defendant's parents decided to homeschool him because he was repeatedly bullied.

Due to concerns over defendant's competency to stand trial in accordance with N.J.S.A. 2C:4-4, defense counsel had him evaluated by Sonia Oquendo, M.D. The doctor opined defendant was not competent to stand trial because he could "not assist his attorney because his ongoing paranoia causes him to limit the information he provides to his attorney, and at times he appears to provide conflicting statements to his attorney." The State retained Louis B. Schlesinger, Ph.D., to evaluate defendant. Dr. Schlesinger opined defendant was competent to stand trial because he understands the incident, is able to inform his attorney if he thinks a witness is untruthful and can adequately assist in his defense.

3

Following a competency hearing, the motion court appointed an independent expert, Susie Chung, Ph.D., BCBA,[1] to evaluate defendant's competency due to the court's concerns over conflicting opinions by the parties' experts. Defendant was twenty-three years old when Dr. Chung evaluated him.

Dr. Chung found defendant competent to stand trial. Relying on her evaluation of defendant, and review of criminal discovery and records of Drs. Oquendo's and Schlesinger's evaluations, Dr. Chung opined:

> [Defendant] appears to have the ability to participate in an adequate presentation of his defense, as evidenced by his ability to discuss pertinent facts surrounding his case, including a sequence of events, evidence, and witnesses. [Defendant] correctly identified his attorney . . . and expressed that he has not had any problems working with [his attorney]. Overall, he was able to engage in a rational discussion about the State's case against him and stated that he was willing to continue to work with his attorney.

Following a second hearing, the court determined defendant was competent to stand trial. In a written decision, the court accepted Dr. Chung's explanation that defendant's misunderstandings in the prior experts' evaluations regarding criminal procedure were not determinative of his competency. The court reasoned the "significant period of time between the prior evaluation, that

---

[1] Board Certified Behavior Analyst.

of [defendant's expert] Dr. Oquendo in June 2018, and Dr. Chung's in July of 2019" aided defendant's understanding of his criminal proceedings. Citing this court's decision in State v. Moya, 329 N.J. Super. 499, 510 (App. Div. 2000), the motion court found Dr. Chung's evaluation methods were "permitted," "impress[ive]," and "uncontroverted." Dr. Chung tutored defendant regarding the jury's role because he was unaware of its purpose. Dr Chung maintained this technique enabled her to "evaluat[e] defendant's understanding of the [jury] concept, not just whether [he could] parrot the answers back to me." This, according to the doctor, was necessary to educate defendant to assess whether he had the capacity to understand different concepts, because "a lack of knowledge[,] whether it's because [he] didn't have formal education, [or he] didn't have experience with the legal system[,] those factors in themselves do not indicate competency." The judge noted the State's expert had "successfully" used the same tutoring method.

## II.

Defendant contends the motion court's competency finding is not supported by the record. He contends the court should have accepted his expert's opinion that he is not competent to stand trial and stresses the State's expert "never concludes that on a going forward basis [defendant] is able to stand trial."

A-3807-21

As for Dr. Chung's position, defendant asserts she merely "opines that he needs treatment or habilitation to attain or maintain competence." Defendant's contentions are unavailing.

Our Criminal Code provides that "[n]o person who lacks capacity to understand the proceedings against him or to assist in his own defense shall be tried, convicted or sentenced for the commission of an offense so long as such incapacity endures." N.J.S.A. 2C:4-4(a). A person is considered mentally competent to stand trial on criminal charges if the proofs satisfy the requirements of N.J.S.A. 2C:4-4(b). See State v. Gorthy, 226 N.J. 516, 531-32 (2016). The statute provides:

> b. A person shall be considered mentally competent to stand trial on criminal charges if the proofs shall establish:
>
> (1) That the defendant has the mental capacity to appreciate his presence in relation to time, place and things; and
>
> (2) That his elementary mental processes are such that he comprehends:
>
> (a) That he is in a court of justice charged with a criminal offense;
>
> (b) That there is a judge on the bench;
>
> (c) That there is a prosecutor present who will try to convict him of a criminal charge;

6

(d) That he has a lawyer who will undertake to defend him against that charge;

(e) That he will be expected to tell to the best of his mental ability the facts surrounding him at the time and place where the alleged violation was committed if he chooses to testify and understands the right not to testify;

(f) That there is or may be a jury present to pass upon evidence adduced as to guilt or innocence of such charge or, that if he should choose to enter into plea negotiations or to plead guilty, that he comprehend the consequences of a guilty plea and that he be able to knowingly, intelligently, and voluntarily waive those rights which are waived upon such entry of a guilty plea; and

(g) That he has the ability to participate in an adequate presentation of his defense.

[N.J.S.A. 2C:4-4(b).]

At a minimum, the defendant must have "'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and . . . [possess] a rational as well as a factual understanding of the proceedings against him.'" State v. Purnell, 394 N.J. Super. 28, 47 (App. Div. 2007) (quoting Dusky v. United States, 362 U.S. 402, 402 (1960)).

Appellate review of a motion court's competency ruling is "'typically, and properly, highly deferential.'" State v. M.J.K., 369 N.J. Super. 532, 548 (App. Div. 2004) (quoting Moya, 329 N.J. Super. at 506). We do not review the factual

7

record to determine how we would decide the matter if we were "the court of first instance." State v. Johnson, 42 N.J. 146, 161 (1964). A trial court's determination of competency will be sustained if there is sufficient supporting evidence in the record. Purnell, 394 N.J. Super. at 50.

We conclude there is sufficient evidence in the record to support the court's finding defendant is competent to stand trial. We affirm substantially for the reasons expressed in the court's well-reasoned written decision. The court appropriately appointed an independent expert to evaluate defendant's competency, who in turn provided a sound basis for the court's ruling.

III.

We now pivot to defendant's contention that the motion court erred in denying his motion to suppress his confession following a Miranda[2] hearing. Bergen County Prosecutor's Office (BCPO) Detective Gary Boesch and Lieutenant Gary Almers, and Dr. Gallo testified at the hearing. Additionally, the video recording of the interview of Dr. Gallo and defendant were admitted into evidence. Defendant asserts that, "[u]nder the totality of circumstances," the State failed to prove beyond a reasonable doubt that he—who was a juvenile

---

[2] Miranda v. Arizona, 384 U.S. 436, 467-70 (1966).

A-3807-21

when interrogated—"provided a knowing, voluntary, and intelligent waiver of his Constitutional Right against self-incrimination." We agree.

A.

Washington Township police arrested defendant at his home shortly after Teia's murder and took him to the local police station. Det. Boesch advised defendant that because he was a juvenile he could not speak about the incident until his father was present, and transported defendant to the BCPO where he was placed in an interview room unhandcuffed. The proceeding was video recorded. Before Dr. Gallo was taken to the interrogation room where his son was, he was told his son did not want him in the room. After Dr. Gallo was taken into the interrogation room, in the presence of Det. Boesch's supervisor, Sergeant James McMorrow, Det. Boesch Mirandized the uncuffed defendant. Defendant answered that he understood his rights and initialed the <u>Miranda</u> form. Defendant also initialed the form statement that he did not want his parent present. The form, however, stated: "Further, my parent/guardian can enter the room any time he/she desires despite this waiver and regardless of whether or not I request their presence." After Det. Boesch showed Dr. Gallo his son's completed form, he read him the parent waiver, which states:

> I, Robert Gallo . . . the father . . . to Travis Gallo . . . <u>who is at least fourteen (14) years of age</u>. I understand

that I have the right to be present, and the law presumes that I will be present, during any questioning of my child. However, I do not wish to be present during the interview of my child and I authorize the interview to be done without me being present. I understand that at any time during the interview, I can change my mind and ask to be readmitted to the interview.

Before Dr. Gallo left his uncuffed son to be interviewed, Det. Boesch confirmed with Dr. Gallo and defendant that they both wanted the interview to proceed without Dr. Gallo being present. At no point were the father and son given the opportunity to speak alone, outside the presence of law enforcement, before they both waived the right to have the father present during the interview. Yet, Dr. Gallo never asked to be "readmitted" or "to communicate with his son" during his son's seventy-eight-minute interview. He testified:

> If you ask me to sign away my rights, I'm not so sure I understood that. . . . that's my signature on the piece of paper. But I don't think that I was able to really comprehend what I [was] giving away. Nor do I think it was explained to me to be quite honest with you. And there's a big difference between reading something and explaining it. . . . I think, you know, if you have someone who is obviously, for lack of better words, a deer in the headlights, I think it's the obligation of the person who gets them to sign it to make sure they understand exactly what they're doing. I'm not so sure that happened.

After defendant waived his right to remain silent, he was interviewed alone and admitted to intentionally killing his sister. He said he contemplated

doing it ever since his fight with his sister the prior month of November.  He was in the kitchen reheating pasta when his sister walked in, and he felt "there was some tension."  After he finished eating, he took a kitchen knife to his room, waited a few minutes before kicking in his sister's door, and stabbed her approximately 109 times.

In a written decision, the court, applying our Supreme Court's decision in State v. Presha, 163 N.J. 304 (1998), recognized the heightened protections afforded to juveniles prior to custodial interrogation and the need to ensure defendant, a juvenile when he was taken into custody, was afforded those protections.  In finding defendant freely confessed to stabbing his sister to death, the court examined "the totality of circumstances surrounding the arrest and interrogation, including such factors as '[defendant's] age, education and intelligence, advice as to constitutional rights, length of detention, whether the questioning was repeated and prolonged in nature and whether physical punishment or mental exhaustion was involved.'"  Presha, 163 N.J. at 313 (quoting State v. Miller, 76 N.J. 392, 402 (1978)).  The court found:  (1) defendant "was just shy of his [eighteenth] birthday by six weeks" when arrested; (2) defendant's lack of "prior contact with the criminal justice system is equally unimpressive"; (3) defendant's "educational challenges . . . [did] not

serve to invalidate his waiver" considering the interrogation demonstrated he understood his rights; (4) "it [was] of no moment that the detectives did not inquire, nor were they advised" of his challenges; (5) defendant was not "restrained or intimidated in any way"; and (6) "[d]efendant was adequately advised of his constitutional rights" to have his father present or not during the interview.

Concerning Dr. Gallo's involvement, the court found he was also properly advised of his constitutional right to be present during his son's interview even if his son did not want him present. The court found "Dr. Gallo was composed and showed no signs of breakdown." In addition, the court found "it significant [that Dr. Gallo] is highly educated; [and] he engages in a profession in which he has frequently been exposed to traumatic, emotion-charged situations."

B.

The Fifth Amendment of the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. "Inherent in every Fifth Amendment analysis is the question of whether the [witness's or suspect's] statement was voluntary, and, independently, whether the law enforcement officers taking it complied with Miranda." State v. W.B., 205 N.J. 588, 605 (2011) (citing State v.

Nyhammer, 197 N.J. 383, 400 (2009)). The suspect must be clearly and unequivocally informed of their right to remain silent and to have an attorney present during the interrogation. Miranda, 384 U.S. at 467-70. If the suspect consents to proceed with the interrogation, his or her right to remain silent must be "knowingly and intelligently waived." Id. at 475. The State has the affirmative duty to prove beyond a reasonable doubt that the statement was voluntary given. W.B., 205 N.J. at 602 n.3. New Jersey's application of Miranda stems from our common law and is "treated . . . as though it were of constitutional magnitude, finding that it offers broader protection than its Fifth Amendment federal counterpart." State v. O'Neill, 193 N.J. 148, 176-77 (2007).

"Appellate courts reviewing a grant or denial of a motion to suppress must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record." State v. Gamble, 218 N.J. 412, 424 (2014). "A trial court's findings should be disturbed only if they are so clearly mistaken that the interests of justice demand intervention and correction." State v. Elders, 192 N.J. 224, 244 (2007) (internal quotations omitted). "That standard governs appellate review even when the trial court's findings are premised on a recording or documentary evidence that the appellate court may also review." State v. Tillery, 238 N.J. 293, 314 (2019).

13

## C.

Applying these principles, we take no issue with much of the motion court's application of <u>Presha</u>. The court cited and considered other case law and gave an accurate reflection of the record. Nevertheless, we part company with the court's rejection of defendant's argument that his confession was not voluntarily and freely given because, in accordance with <u>State in Interest of A.A.</u>, 240 N.J. 341, 345 (2020), under the "totality of circumstances," he should have been given the opportunity to talk privately with his father before he declined to have him present during his interview.[3]

In <u>A.A.</u>, our Supreme Court recognized that it stressed twenty years earlier in <u>Presha</u> that in the intimidating situation of law enforcement interrogation, "parents can help juveniles understand they have the right not to incriminate themselves and the right to have an attorney present — and can help juveniles decide whether to waive their rights." 240 N.J. at 345. "Parents essentially serve 'as a buffer' between juveniles and the police." <u>Ibid.</u> (quoting <u>Presha</u>, 163 N.J. at 315).

---

[3] We reject the State's contention that <u>A.A.</u> does not apply to defendant's "seven" year old case. Although defendant was arrested in 2013, the motion court did not deny defendant's motion to suppress until May 15, 2020, over four months after the Supreme Court's January 15, 2020, decision in <u>A.A.</u>

A-3807-21

The facts in <u>A.A.</u> differ from those in this appeal. There, the police "[o]fficers listened to the conversation between mother and son . . . [in] a holding cell — and the State later presented the comments at trial. At no point did the police advise A.A. of his rights. Nor did they question him after he made admissions to his mother." <u>Ibid.</u> The motion court here was tasked with the responsibility of determining whether defendant's <u>confession</u>, after he was Mirandized, should be suppressed as not freely given because he was not properly Mirandized. Yet, the principle enunciated in <u>A.A.</u> — a reinforcement of <u>Presha</u> — equally applies to protect defendant's rights. The <u>A.A.</u> Court held:

> The police should advise juveniles in custody of their <u>Miranda</u> rights — in the presence of a parent or legal guardian — before the police question, or a parent speaks with, the juvenile. Officers should then give parents or guardians a meaningful opportunity to consult with the juvenile in <u>private</u> about those rights. <u>See</u> <u>Q.N.</u>, 179 N.J. at 182 (Wallace, J., dissenting)[4]; <u>A.A.</u>, 455 N.J. Super. at 505; <u>see also</u> <u>D.M. v. State</u>, 949 N.E.2d 327, 335 (Ind. 2011); <u>Commonwealth v. Roane</u>, 329 A.2d 286, 289 (Pa. 1974); <u>In re E.T.C.</u>, 449 A.2d 937, 940 (Vt. 1982). That approach would enable parents to help children understand their rights and decide whether to waive them — as contemplated in <u>Presha</u>. If law enforcement officers do not allow a parent and juvenile to consult in <u>private</u>, absent a compelling reason, that fact should weigh heavily in the totality of the circumstances to

---

[4] <u>State ex rel. Q.N.</u>, 179 N.J. 165, 182 (2004) (Wallace, J., dissenting).

> determine whether the juvenile's waiver and statements were voluntary. See Presha, 163 N.J. at 315.
>
> [Id. at 358-59 (emphasis added).]

The motion court correctly observed that A.A. did not hold that private consultation was per se dispositive of voluntariness. However, we interpret A.A. to mandate that law enforcement should provide private consultation unless there are exceptional circumstances precluding it.

Under the totality of circumstances, the failure of law enforcement to allow defendant and his father the opportunity to speak privately after they were Mirandized is contrary to A.A. and, thereby, warrants suppression of defendant's confession. Despite being just three weeks shy of turning eighteen, defendant (1) had no experience with the criminal justice system; (2) had mental health, processing and cognitive deficits; and (3) was about to be interrogated regarding the stabbing death of his sister. These significant limitations dictate the critical need to have Dr. Gallo serve as a "buffer" to act in his son's best interests. Following his sister's death, defendant was vulnerable and compromised to protect his own interests given the imbalance of power and wits inherent in police interrogations. It is reasonable to think he did not want his father present when he was explaining his sister's brutal death. Yet, he and his father should

16

have been allowed to discuss his constitutional rights before they both waived them.

We take exception to the court's finding that Dr. Gallo's level of education, profession as a medical doctor, and frequent exposure to "traumatic, emotion-charged situations" was significant in establishing he voluntarily waived his right to be present during his son's interrogation or advise his son not to speak without the assistance of legal counsel. Dr. Gallo was unable to calmly and reasonably assist his son under this painful and shocking situation. The record demonstrates he was conflicted and shocked from his son's apparent brutal killing of his daughter. He testified he had difficulty processing the situation, feeling like "a bystander." Our review of the video does not show an actively participating parent. It is reasonable to conclude that he was unable to assist his son.

Even though defendant did not want his father present during the interrogation, he and his father should have been advised that they could speak privately before they respectively waived their rights. The State has presented no reason why a private conversation could not have taken place. Because defendant and his father were not afforded that opportunity, defendant's <u>Miranda</u> rights were violated. Defendant's confession is suppressed, and his guilty plea

17

is vacated.  Given our ruling, it is unnecessary to address defendant's excessive sentence argument.

Reversed and remanded for further proceedings consistent with this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

18